Michael D. Prough (SBN 168741)
mdp@proughlaw.com
Dean C. Burnick (SBN 146914)
dcb@proughlaw.com
PROUGH LAW, APC
1550 Parkside Dr., Ste. 200
Walnut Creek, CA 94596
Telephone: 925-433-5894
Facsimile: 925-482-0929

Attorneys for Plaintiff
MT. HAWLEY INSURANCE COMPANY

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MT. HAWLEY INSURANCE COMPANY, an Illinois Corporation,<br><br>Plaintiff,<br><br>v.<br><br>KILREA CONSTRUCTON, INC., a California Corporation, and JOHN P. McATAMNEY, individually and doing business as KILREA CONSTRUCTION;<br><br>Defendants. | Case No. 23-cv-01335-JST<br><br>NOTICE OF MOTION AND MOTION OF MT HAWLEY INSURANCE COMPANY FOR PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT<br><br>Date: October 12, 2023<br>Time: 2:00 p.m.<br>Dept.: Courtroom 6<br><br>The Honorable Jon S. Tigar |

**NOTICE OF MOTION AND MOTION BY MT. HAWLEY INSURANCE COMPANY FOR PARTIAL SUMMARY JUDGMENT**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on October 12, 2023, at 2:00 p.m., or as soon thereafter as the matter may be heard (by Videoconference) in Courtroom 6, of the above-entitled Court, located at 1301 Clay Street, Oakland, California 94612, Plaintiff Mt. Hawley Insurance Company ("Mt. Hawley") will and hereby does move this court for partial summary judgment ("Motion") against Defendants Kilrea Construction, Inc. and John P. McAtamney on Mt. Hawley's First Claim for Relief (Declaratory Relief – No Defense Duty) and Second Claim for Relief (Declaratory Relief – No Duty To Indemnify) in its First Amended Complaint.

Mt. Hawley's Motion is brought under Rule 56 of the Federal Rules of Civil Procedure on the basis that it is entitled to partial summary judgment against Defendants a matter of law. The Motion is made upon the grounds that the Breach of Contract Exclusion endorsements in each general liability policy issued by Mt. Hawley to Defendants bars any potential for coverage for the underlying lawsuit brought by Jeffrey Horowitz, individually and as trustee of the Horowitz Living Trust, against Defendants, Kilrea Construction, Inc. and John P. McAtamney, individually and dba Kilrea Construction, *Jeffrey Horowitz et al. v. John Paul McAtamney, et. al*, San Francisco Superior Court no. CGC-20-584666 ("Underlying Action"), and Mt. Hawley has no duty to defend or indemnify Defendants for the Underlying Action under its Policies.

Mt. Hawley's Motion is based on this Notice and Motion, the Memorandum of Points and Authorities below, the Declaration of Michael D. Prough and Request for Judicial Notice filed and served herewith, any reply papers Mt. Hawley submits, and on such other matters as may be presented at or prior to the hearing.

# TABLE OF CONTENTS


| | Page |
|---|---|
| INTRODUCTION …………………..……………………………. | 1 |
| ISSUES PRESENTED …..……………………..………………. | 3 |
| STATEMENT OF FACTS ……………………………………... | 3 |
| A. The Mt. Hawley Policies .................................................. | 3 |
| 1. The Insuring Agreement …………………………. | 4 |
| 2. The Breach of Contract Exclusion ……………….. | 5 |
| B. The Underlying Action ………………………………… | 5 |
| C. Mt. Hawley's Defense of Kilrea Under a Reservation of Rights …………………………………………………. | 10 |
| LEGAL STANDARDS …………………………………………… | 10 |
| LEGAL ARGUMENT …………………………………………….. | 12 |
| I. MT. HAWLEY OWES NO DUTY TO DEFEND KILREA BECAUSE OF THE BREACH OF CONTRACT EXCLUSION…………………………….. | 12 |
| A. The Underlying Action Falls within the Breach of Contract Exclusion ……………………………………… | 13 |
| B. Breach of Contract Exclusions are Valid and Enforceable | 16 |
| C. Mt. Hawley Owes No Duty to Defend or Duty to Indemnify …….. | 20 |
| II. ENFORCING AN EXCLUSION TO BAR COVERAGE FOR THE SUBJECT LOSS DOES NOT MEAN THAT ALL COVERAGE UNDER THE POLICIES IS "ILLUSORY" ………………………………………… | 20 |
| CONCLUSION …………………………………………………….. | 24 |

# TABLE OF AUTHORITIES

**Page**

**Cases**


*24th & Hoffman Investors, LLC v. Northfield Ins. Co.* (2022) 82 Cal.App. 5th 825 .......... 3, 14

*Aetna Casualty & Surety Co. v. Richmond* (1977) 76 Cal.App.3d 645 .......... 23

*AKN Holdings, LLC v. Great American E & S Ins. Co.* (C.D. Cal. 2021) 2021 WL 2325647, *2-3 .......... 2, 19

*Anderson v. Liberty Lobby, Inc.* (1986) 477 U.S. 242 .......... 10

*Associated Industries Ins. Co. v. Mt. Hawley Ins. Co.* (S.D. Cal. 2021) 536 F. Supp.3d 676 .......... 2, 15, 17

*Autodistributors, Inc. v. Nationwide E&S Specialty* (N.D. Cal. 2022) 2022 WL 3648554, *4-5 .......... 18

*Baldwin v. AAA Northern California, Nevada & Utah Ins. Exchange* (2016) 1 Cal.App.5th 545 .......... 12

*Bank of the West v. Superior Court* (1992) 2 Cal.4th1254 .......... 11

*Barnett v. Fireman's Fund Ins. Co.* (2001) 90 Cal. App.4th 583 .......... 10

*Bay Cities Paving & Grading v. Lawyers' Mut. Ins. Co.* 1993) 5 Cal.4th 854 .......... 11

*Celotex Corp. v. Catrett* (1986) 477 U.S. 317 .......... 10

*Certain Underwriters at Lloyd's, London v. Superior Court* (2001) 24 Cal.4th 945 .......... 20

*Fidelity & Deposit Co. v. Charter Oak Fire Ins. Co.* (1998) 66 Cal.App.4th 1080 .......... 11

*Franklin EWC, Inc. v. Hartford Financial Services Group* (N.D. Cal. 2020) 506 F. Supp.3d 854 .......... 21

*G.K. Skaggs, Inc. v. Hartford Cas. Ins. CO.* (9th Cir. 2014)
579 Fed.Appx. 542 .................................................. 2

*Hadland v. NN Investors Life Insurance Co.* (1994)
24 Cal.App.4th 1578 .................................................. 23

*Hackethal v. National Casualty Co.* (1987)
189 Cal.App.3d 1102 .................................................. 23

*Harper Construction Co., Inc. v. National Union Fire Ins. Co.* (S.D. Cal. 2019)
377 F. Supp.3d 1134 .................................................. 20

*Harris v. TAP Worldwide, LLC* (2016)
248 Cal.App.4th 373 .................................................. 21

*Hartford Cas. Ins. Co. v. Swift Distribution, Inc.,* (2014)
59 Cal.4th 277 .................................................. 12, 20

*HC Waterford Properties, LLC v. Mt. Hawley Ins. CO.* (S.D. Fla. 2009)
2009 WL 2600431, *6-7 .................................................. 17

*Hess v. Ford Motor Co.* (2002)
27 Cal.4th 516 .................................................. 23

*James River Ins. Co. v. Medolac Labs* (C.D. Cal. 2018)
290 F.Supp.3d 956 .................................................. 2, 15, 19

*Jeff Tracy, Inc. v. U.S. Specialty Ins. Co.* (C.D. Cal. 2009)
636 F. Supp.2d 995 .................................................. 21

*Komorsky v. Farmers Insurance Exch.* (2019)
33 Cal.App.5th 960 .................................................. 23

*Medill v. Westport Ins. Corp.* (2006)
143 Cal.App. 4th 819 .................................................. *passim*

*Minkler v. Safeco Ins. Co. of America* (2010)
49 Cal.4th 315 .................................................. 11

*Monticello Ins. Co. v. Essex Ins. Co.* (2008)
162 Cal.App.4th 1376 .................................................. 12

*Mt. Hawley Insurance Company v. Aguilar* (C.D.Cal. 2008)
2008 WL 11342656 .................................................. 17

*Mt. Hawley Ins. Co. v. Huser Construction Co., Inc. (5th Cir. 2020)*
*707 Fed.Appx 183* .................................................. 3

*Nestle, USA, Inc. v. Travelers Casualty & Surety Co.* (9th Cir. 2001)
10 Fed.Appx. 438 .................................................. 2, 15

*North Star Reinsurance Corp. v. Superior Court* (1992)
10 Cal.App.4th 1815 .......................................................... 23

*Office Depot v. AIG Specialty Ins. Co.* (C.D. Cal. 2019)
2019 WL 4570011 .......................................................... 2

*Office Depot, Inc. v. AIG Specialty Ins. Co.* (9th Cir. 2020)
829 Fed.Appx. 263 .......................................................... 2, 13, 18

*Penn-Star Ins. Co. v. Caden Cos., Inc.* (C.D. Cal. 2017)
20107 WL 6940535, *5 .......................................................... 2, 19

*Quan v. Truck Ins. Exch.* (1998)
67 Cal.App.4th 583 .......................................................... 10

*Regional Steel Corp. v Liberty Surplus Ins. Corp.* (2014)
226 Cal.App.4th 1377 .......................................................... 11

*S.B.C.C., Inc. v. St. Paul Fire & Marine Ins. Co.* (2010)
186 Cal.App.4th 383 .......................................................... 14

*Scottsdale Insurance Co. v. Essex Insurance Co.* (2002)
98 Cal.App.4th 86 .......................................................... 21

*Scottsdale Ins. Co. v. Mt. Hawley Ins. Co.* (S.D. Tex. 2011)
2011 WL 9169946 .......................................................... 2, 3, 17

*Scottsdale Ins. Co. v. MV Transport* (2005)
36 Cal.4th 643 .......................................................... 3, 12

*Secard Pools, Inc. v. Kinsale Insurance Co.* (C.D. Cal. 2017)
3188 F.Supp.3d 1147 .......................................................... 21

*Southgate Recreation & Park Dist. v. Cal. Assn. for Park & Recs Ins.* (2003)
106 Cal.App.4th 293 .......................................................... *passim*

*Spa de Soleil, Inc. v. General Star Indem. Co.* (C.D. Cal. 2011)
787 F.Supp. 1091
.......................................................... 2, 19

*Supervalu, Inc. v. Wexford Underwriting Managers, Inc.* (2009)
175 Cal.App.4th 64 .......................................................... 24

*Travelers Property Cas. Co. v. Actavis, Inc.* (2017)
16 Cal.App.5th 2016 .......................................................... *passim*

*Trenches, Inc. v. Hanover Insurance Company* (9th Cir. 2014)
575 Fed.Appx. 741 .......................................................... 2, 18

*Tripacific Capital Advisors, LLC v. Federal Ins. Co.* (N.D. Cal. 2022)
2022 WL423409 .......................................................... 2, 15, 18

*Udinsky v. State Farm Fire & Cas. Co.* (N.D. Cal. 2019) 2019 WL 1017606, *11 ........ 24

*Vandenberg v. Superior Court* (1999) 21 Cal.4th 815 ........ 19

*Velasquez v. Truck Ins. Exch.* (1991) 1 Cal.App.4th 712 ........ 24

*Waller v. Truck Ins. Exch.* (1995) 11 Cal.4th 826 ........ *passim*

*W. G. Hall, LLC v. Zurich American Ins. Co.* (N.D. Cal. 2017) 2017 WSL 3782771 ........ 2, 19

**Statutes**

Cal. Civ. Code § 1636 ........ 11

Cal. Civ. Code § 1638 ........ 11

Cal. Civ. Code § 1639 ........ 11

# INTRODUCTION

The "Breach of Contract Exclusion" endorsement (Appendix A hereto), contained in each of the insurance policies at issue, squarely bars coverage for the Underlying Action[1] against John P. McAtamney ("JPM") and Kilrea Construction, Inc. (collectively "Kilrea" or "Defendants"). In that Action, Mr. Horowitz, a homeowner, sued Kilrea—with whom he entered into a written contract to perform and oversee a home renovation project—alleging that Kilrea owed and breached obligations to construct and complete the "work required under the Contract in an expeditious and workmanlike manner, free from any faults and defects…." Prough Decl., Ex. 9 (SAC ¶ 52 (incorporated into each subsequent cause of action); *see also, e.g.*, SAC ¶¶ 26 (& Exh. A thereto), 27, 36, 37, 53-57; 72-74 (same)).

The Underlying Action includes causes of action for Breach of Contract, Breach of Warranty, Negligence, Negligent Supervision and Declaratory Relief—all related to the same allegedly faulty work, predicate facts and claimed damages. Re-labeling the alleged breach of contract as also constituting "negligence" does not defeat application of the exclusion. Mt. Hawley's exclusion, as worded, extends not only to a claim labeled "breach of contract," but also to "***any claim or 'suit' for … 'property damage' … arising directly or indirectly out of*** the following: a. Breach of express or implied contract; b. Breach of express or implied warranty…."

Courts have broadly enforced similar "breach of contract" exclusions and, giving broad effect to the "arising out of" language, concluded coverage was also barred for related "tort" claims. *Medill v. Westport Ins. Corp.*, 143 Cal.App.4th 819, 830 (2006) (no coverage for tort claims where insureds' "potential liability would not exist without the contracts" the insured company had entered into); *Southgate Recreation & Park Dist. v. California Assn. for Park & Recreation Ins.*, 106

---

[1] *Jeffrey Horowitz et al. v. John Paul McAtamney, et. al*, San Francisco Superior Court no. CGC-20-584666. The operative, Second Amended Complaint ("SAC") is attached as Exhibit 9 to the Declaration of Michael D. Prough ("Prough Decl.") in support of this Motion.

Cal.App.4th 293, 302 (2003) (claims for alleged "negligent or improper administration of the [] contract … arise out of or are related to" the contract).

Federal courts have also given effect to broad exclusions like Mt. Hawley's – and even to Mt. Hawley's exact exclusion. *See, e.g., Associated Indus. Ins. Co. v. Mt. Hawley Ins. Co.*, 536 F.Supp.3d 676, 686 (S.D. Cal. 2021) (holding the Mt. Hawley exclusion bars duty to defend, where "each claim was, at a minimum, incident to or connected with [developer's] allegations that [general contractor] breached various contracts or warranties by constructing the building in a defective manner.") In addition to many district court decisions,[2] the Ninth Circuit enforced such an exclusion in *Office Depot, Inc. v. AIG Specialty Ins. Co.*, 829 Fed.Appx. 263, 263-64 (9th Cir. 2020) ("These clauses also exclude coverage of tort claims which could not exist without the relevant underlying contracts")[3]; and the Fifth Circuit has enforced Mt. Hawley's exclusion as written. *Scottsdale Ins. Co. v. Mt.*

---

[2] *See, e.g., Tripacific Capital Advisors, LLC v. Federal Ins. Co.*, 2022 WL 423409, *6 (N.D. Cal. 2022) (no coverage where "absent the agreement with [underlying plaintiff] that allegedly created the fiduciary duty, there would be no liability that existed"); *AKN Holdings, LLC v. Great American E & S Ins. Co.*, 2021 WL 2325647. *2-3 (C.D. Cal. 2021) ("When triggered, breach-of-contract exclusions containing such sweeping language extend to non-contract claims"); *Office Depot v. AIG Spec. Ins. Co*., 2019 WL 4570011, *6-9 (C.D. Cal. 2019) (affirmed by Ninth Circuit as noted above); *James River Ins. Co. v. Medolac Labs.*, 290 F.Supp.3d 956, 968 (C.D. Cal. 2018) (agreeing with courts holding that "breach of contract exclusions bar coverage of other claims based on the same conduct as that alleged to constitute the breach of contract"); *Penn-Star Ins. Co. v. Caden Cos., Inc.*, 2017 WL 6940535, *5 (C.D. Cal. 2017) (no coverage where slander claim "allegations [] all arise out of [insured's] alleged breach of contract"); *W.G. Hall, LLC v. Zurich American Ins. Co.*, 2017 WL 3782771, *7 (N.D. Cal. 2017) (contract exclusion barred coverage where tort and statutory claims "would not exist absent an employment contract"); *Spa de Soleil, Inc. v. General Star Indem¶. Co.*, 787 F.Supp.2d 1091, 1098 (C.D. Cal. 2011) (no coverage where same factual allegations pled in support of tort claims "stem directly from the breach of contract….").

[3] *See also, e.g., Trenches, Inc. v. Hanover Ins. Co.*, 575 Fed. Appx. 741, 742 (9th Cir. 2014) (enforcing breach of contract exclusion to bar coverage for alleged trademark and trade dress claims "arising out of" alleged breach of contract); *G.K Skaggs Inc. v. Hartford Cas. Ins. Co.*,579 Fed. Appx. 542, 544 (9th Cir. 2014) (exclusion applied to also bar coverage for alleged disparagement claims); *Nestle, USA, Inc. v. Travelers Casualty & Surety Co.*,10 Fed.Appx. 438, 440 (9th Cir. 2001) ("Because Nestle's claims all arise out of the factual situation that constituted a breach of contract, they are excluded from coverage").

*Hawley Ins. Co.*, 2011 WL 9169946, *6-*9 (S.D. Tex. 2011), *affirmed*, 488 Fed.Appx. 859 (5th Cir. 2012) (Texas law) (enforcing exclusion); *see Mt. Hawley Ins. Co. v. Huser Const. Co., Inc.*, 797 Fed.Appx. 183, *7-8 (5th Cir. 2020) (same).

A liability insurer's duty to defend, "though broad, is measured by the nature and kinds of risk insured by the policy." *Travelers Property Cas. Co. v. Actavis, Inc.*, (2017) 16 Cal.App.5th 1026, 1037 (2017); *see also, 24th & Hoffman Investors, LLC v. Northfield Ins. Co.*, 82 Cal.App.5th 825, 834 (2022) (duty to defend "is not without limits" and may be barred by an exclusion). The insurer "has not contracted to pay defense costs for claims that are not even potentially covered." *Scottsdale Ins. Co. v. MV Transp.*, 26 Cal.4th643, 655 (2005). The Breach of Contract Exclusion squarely bars coverage for the Underlying Action and the claims alleged therein. Mt. Hawley's motion for partial summary judgment should be granted.

## ISSUES PRESENTED

1. Is Mt. Hawley entitled to partial summary judgment on its First Claim for Relief, for a Declaratory Judgment that it owes no duty to defend the Defendants against the Underlying Action, by virtue of its "Breach of Contract Exclusion" contained within each contract of insurance that Mt. Hawley entered into with the Defendants?

2. Is Mt. Hawley entitled to partial summary judgment on its Second Claim for Relief, for a Declaratory Judgment that it owes no duty to indemnify Defendants for the Underlying Action, by virtue of its "Breach of Contract Exclusion" contained within each contract of insurance that Mt. Hawley entered into with the Defendants?

## STATEMENT OF FACTS

A. The Mt. Hawley Policies

Mt. Hawley and the Defendants entered into six separate, consecutive insurance contracts:

- Policy No. MGL0183474, effective 2/5/2016 to 2/5/2017, naming

Kilrea Construction as insured ("2016-17 Policy");

- Policy No. MGL0185876, effective 2/5/2017 to 2/5/2018, originally naming Kilrea Construction as insured ("2017-18 Policy")[4];
- Policy No. MGL0188477, effective 2/5/2018 to 2/5/2019, naming Kilrea Construction, Inc. as insured ("2018-19 Policy");
- Policy No. MGL0189243, effective 2/5/2019 to 2/5/2020, naming Kilrea Construction, Inc. as insured ("2019-20 Policy");
- Policy No. MGL0189951, effective 2/5/2020 to 2/5/2021, naming Kilrea Construction, Inc. as insured ("2020-21 Policy"); and
- Policy No. MGL0193114, effective 2/5/2021 to 5/11/2021, naming Kilrea Construction, Inc. as insured ("2021 Policy").

*See* Exhs. 1, 2, 3, 4, 5, & 6 to Prough Decl. (the "Policies" or a "Policy"). The provisions relevant to this particular motion are the same in all six Policies, so for ease of reference and to avoid redundancy, Exhibit 3 (the 2018-19 Policy)[5] will be cited to.

1. <u>The Insuring Agreement</u>

Each of the Policies' "Insuring Agreement" clause provides, in relevant part, that Mt. Hawley will "pay those sums that the insured becomes legally obligated to pay as damages because of … 'property damage' to which this insurance applies. We will have the right and duty to defend the insured against any 'suit' seeking those damages. However, we will have no duty to defend the insured against any

[4] Kilrea Construction incorporated in the Spring of 2017; so the 2017-18 Policy was thereafter amended mid-term to name Kilrea Construction, Inc. as its Named Insured. (Exh. 2 at 64.) The change has no impact on this motion (directed to the Breach of Contract exclusion), as both the sole proprietorship and the corporation were sued in the Underlying Action.

[5] Kilrea's work was completed during the 2018-19 policy period, so that is the only Policy that could apply for timing purposes (the prior Policies would be subject to the work in progress exclusions (j(5)/j(6)); the later Policies are inapplicable by virtue of the Continuous and Progressive Injury or Damage Exclusions). Because the Breach of Contract Exclusion endorsement appears in all six Policies, timing issues are not determinative of the present motion. Mt. Hawley has reserved rights under the Policies and applicable law, as to all other issues.

'suit' seeking damages for … 'property damage' to which this insurance does not apply." (Prough Decl., Exh. 3 at 7.)

The insurance applies (per ¶ 1.b. of the Insuring Agreement) to "property damage" only if it "is caused by an 'occurrence'" and only if the "'property damage' occurs during the policy period." *Id*. "Occurrence" is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." (*Id.* at 21.) "Property damage" means "a. Physical injury to tangible property, including all resulting loss of use of that property"; or "b. Loss of Use of tangible property that is not physically injured." (*Id.* at 22.)

2. The Breach of Contract Exclusion

Each Mt. Hawley Policy contains a separate, one-page endorsement, entitled Breach of Contract Exclusion (form CGL 350 (08/09)), which reads:

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY**

**BREACH OF CONTRACT EXCLUSION**

> This insurance does not apply, nor do we have a duty to defend any claim or "suit" for "bodily injury," "property damage," or "personal and advertising injury" arising directly or indirectly out of the following:
>
> **a.** Breach of express or implied contract;
>
> **b.** Breach of express or implied warranty;
>
> **c.** Fraud or misrepresentation regarding the formation, terms or performance of a contract; or
>
> **d.** Libel, slander or defamation arising out of or within the contractual relationship.

(Exh. 3 at 56; *see also* Exhs. 1 at 52, 2 at 51, 4 at 59, 5 at 54, 6 at 53.)

B. The Underlying Action

Jeffrey Horowitz, individually and as trustee of The Horowitz Living Trust

("Horowitz"), is the plaintiff in the Underlyng Action. Horowitz is or was the owner of a house located at 2555 Divisadero Street, San Francisco, California (the "Property").

On November 22, 2019 Horowitz commenced an arbitration against Kilrea. (Prough Decl., Exh. 9 at 87.) On June 3, 2020, the parties entered a "Stipulation to Withdraw Arbitration and File Action in Superior Court." (*Id.*, Exh. 9 at 86.) On June 9, 2020, Horowitz filed the Underlying Action in San Francisco Superior Court. In his original Complaint, Horowitz asserted causes of action for 1. Breach of Contract; 2. Breach of Implied Warranty; 3. Negligence; 4. Negligent Supervision; and 5. Declaratory Relief. (*Id.*, Exh. 7.) On May 6, 2022, Horowitz filed his First Amended Complaint, with causes of action for 1. Breach of Contract; 2. Breach of Implied Warranty; 3. Negligence; 4. Negligent Supervision; and 5. Declaratory Relief. (*Id.*, Exh. 8).

On June 24, 2022, Horowitz filed his Second Amended Complaint ("SAC"), with causes of action for 1. Breach of Contract; 2. Breach of Implied Warranty; 3. Negligence; 4. Negligent Supervision; and 5. Declaratory Relief. (*Id.*, Exh. 9).

In the general allegations of the SAC, Horowitz alleged that "On or about August 2, 2016, after months of negotiation, Plaintiff entered into a contract with JPM/KILREA SOLE by and through JPM (the 'Contract'), for the completion of the work at the Property. A true and correct copy of the August 2016 Contract is attached hereto as Exhibit A." (Id., Exh. 9 at 8, ¶ 26, Exh. A thereto.) "Under the Contract, JPM agreed to furnish all work, labor, equipment, tools, materials, supervision, scheduling and coordination necessary to construct and complete the work under the Contract in an expeditious and workmanlike manner as a general contractor." (*Id.*, ¶ 27.) The Contract was later assigned to Kilrea Construction, Inc., under an April 3, 2017, Consent to Assignment. (*Id.*, ¶ 36, Exh. C thereto; see also Exh. D thereto (Stipulation, at 2:1-3)). Horowitz alleged the Defendants "failed to provide all labor, material, equipment, and services to construct or complete all

work in a good, workmanlike, and substantial manner." (*Id.*, ¶ 41).

Horowitz categorized his "Deficiencies and Damages" as "(1) Overbilling; (2) Substantial Decrease in Home Value From Loss of Roof Elevator Shaft and Interior Landing; and (3) Outstanding Damages." (*Id.*, ¶ 47.) As for Overbilling, he alleged Defendants overbilled "for defective work and the cost to pay Defendants to correct this defective work repeatedly until work was completed in accordance with the approved drawings," followed by a list of dozens of alleged particulars regarding improper or defective construction, billing for repairs to damage they had caused, and several alleged instances of inefficiencies and charging too much for incurred costs, employee time and expenses. (*Id.*, ¶ 48.) For the "Decrease in Home Value," Horowitz alleges that Defendants' failure to build the roof elevator shaft and interior landing, in accordance with the architectural drawings, caused his house not to gain in value as it would have if the work had been performed as required. (*Id.*, ¶ 49.) For "Outstanding Damages," Horowitz alleged "items that were improperly installed and defectively remodeled by Defendants, resulting in damage to the Property including damage to home interiors…." (*Id.*, ¶ 50.)

The SAC's first cause of action, "Breach of Contract," alleges as to Kilrea: "52. On or about August 2, 2016, Plaintiff entered into a written contract with Kilrea, wherein Kilrea agreed to serve as general contractor for the work at the Property and furnish all work, labor, tools, equipment, materials, supervision, scheduling, and coordination necessary to construct and complete in a good, high quality way the work required under the Contract in an expeditious and workmanlike manner, free from any faults and defects, in exchange for a monthly fee of $26,000, not to exceed eleven (11) months and bill on a time and material basis for the work a Contractors cost." Schedule A to the Contract required Kilrea to perform various tasks, including "oversee all aspects of construction; …. schedule all subcontractors to keep project moving and avoid slowdowns; ensure subcontractors fulfilled their contractual and city code obligations; oversee quality

control of all aspects of construction; … provide a site supervisor to oversee carpentry team, protection of the Property, subcontractors, inspections; … Kilrea failed to perform many, if not all, of the above noted requirements." (*Id.*, ¶ 53.) Schedule B to the Contract specified work Kilrea was not to perform, and "Kilrea breached the contract by performing the work prohibited in Attachment B." (*Id.*, ¶ 54.)

Horowitz alleged that Defendants "breached the Contract in numerous ways, including, without limitation, by failing to complete and/or repair the work in a good and workmanlike manner; failing to ensure that the work was free from defects and/or performing in accordance with the reasonable expectations of [Horowitz] and as required under the Contract documents; failing to bill time and materials and Contractor's costs…. The defects and breaches resulted in damage to other work and existing improvements." (*Id.*, ¶ 56.) "As a direct and proximate result of Defendants' breach of the Contract as herein alleged, [Horowitz] has been damaged in an amount to be shown according to proof, representing the reasonable cost of construction, interest expense, restoration, repair, and related consequential damages arising from or related to the Defects, together with attorneys' fees, investigation costs, loss of use, and other litigation costs…." (*Id.*, ¶ 57.)

The SAC's second cause of action, for "Breach of Implied Warranty," "incorporates and re-alleges, as though fully set forth herein, paragraphs 1 through 70, inclusive." (*Id.*, ¶ 71.) No other new or additional facts are alleged. Plaintiff contends that "Defendants impliedly warranted that the work at the Property would be free from defects and fit for the purpose of ordinary residential habitation…" (*Id.*, ¶ 72); and that, "As a direct and proximate result of Defendants' breach of warranty as herein alleged, Plaintiff has sustained damages in an amount to be shown according to proof at trial, representing the reasonable cost of reconstruction, interest expense, restoration, repair, and related consequential damages arising from or related to the Defects…." (*Id.*, ¶ 74.)

The SAC's third cause of action, for "Negligence," "incorporates and re-alleges, as though fully set forth herein, paragraphs 1 through 74, inclusive." (*Id.*, ¶ 75.) No new facts or conduct are alleged. Rather, Horowitz alleged defendants owed "a duty to exercise due care to construct and provide materials for the Property in a good and workmanlike manner and in accordance with the applicable building codes, the custom and practice in the industry at the time, and the plans, specifications, and other contract documents." (*Id.*, ¶ 80.) Defendants were "negligent and breached their respective duties of due care in that they did not, inter alia, construct and provide labor or materials for the work at the Property with due care…" and also "failed to provide due care in the administration, supervision, and observation of the construction and repair according to the applicable standard of care at the time." (*Id.*, ¶ 82.) Thus, "the Property is materially defective and deficient in its materials, workmanship, and construction and suffers from the Defects, as set forth above…." (*Id.*, ¶ 83.)

The SAC's fourth cause of action, "Negligent Supervision," "incorporates and re-alleges, as though fully set forth herein, paragraphs 1 through 84, inclusive." (*Id.*, ¶ 85.) Once again, no new facts are alleged. "Under the Contract, Defendants undertook the responsibility to oversee the work of their own employees as well as the subcontractors hired to perform the work at the Property." (*Id.*, ¶ 86.) Defendants "engaged individuals and/or entities who were unfit and/or incompetent to perform the work they were hired to complete, as well as negligently instructed and supervised the work, resulting in defects." (*Id.*, ¶ 87.) As a result, "Plaintiff was harmed, as discussed above." (*Id.*, ¶ 89.)

The SAC's fifth cause of action, "Declaratory Relief," likewise incorporates all prior general allegations and causes of action. (*Id.*, ¶ 91.) Plaintiff then seeks declaratory relief concerning whether Kilrea can enforce certain defensive provisions in the Contract (including a release through the date of the final payment, and a limitation of liability clause). (*Id.*, ¶¶ 95-102, 104-05.) No new or

different facts or damages are alleged with respect to any alleged claim for damages due to property damage.

C. Mt. Hawley's Defense of Kilrea Under a Reservation of Rights

Kilrea tendered its defense of the initial arbitration demand, which Mt. Hawley accepted by letter dated February 18, 2020, subject to a full and complete reservation of rights. (Prough Decl., Exh. 10.) Mt. Hawley has continued to defend Kilrea after Horowitz refiled in Superior Court, updating its reservation of rights by letters dated July 15, 2020, July 30, 2021, and March 10, 2023. (*Id.*, Exhs. 11, 12, 13.) Mt. Hawley has fully defended Defendants in the Underlying Action. (*See* Defs. Answer, Dkt. # 18, ¶¶ 42-50 (admitting complaint allegations)).

## LEGAL STANDARDS

The Court may grant summary judgment on "each claim or defense—or the part of each claim or defense—on which summary judgment is sought." Fed. R. Civ. P. 56(a). Summary judgment is proper when the pleadings, the discovery and evidence show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.*; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A factual issue is "genuine" when there is sufficient evidence for a reasonable trier of fact to resolve the issue in the nonmovant's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" when its resolution might affect the outcome of the suit under the governing law. *Id.* "Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 249. The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 325.

The interpretation of an insurance contract presents a question of law for the courts. *Waller v. Truck Ins. Exch., Inc.*, 11 Cal. 4th 1, 18 (1995). Likewise, whether an insurer owes a duty to defend a third-party complaint is a question of law. *Barnett v. Fireman's Fund Ins. Co.*, 90 Cal.App.4th 500, 508 (2001); *Quan v. Truck Ins. Exch.* (1998) 67 Cal.App.4th 583, 601-02. "While insurance contracts

have special features, they are still contracts to which the ordinary rules of contractual interpretation apply." *Bank of the West v. Superior Court*, 2 Cal. 4th 1254, 1264, (1992). "[T]he fundamental rules of contract interpretation are based on the premise that the interpretation of a contract must give effect to the 'mutual intention' of the parties." *Travelers*, 16 Cal.App.5th at 1037. Such intent "is to be inferred, if possible, solely from the written provisions of the contract." *Id*. (citing Cal. Civil Code § 1636). The "clear and explicit meaning of these provisions, interpreted in their 'ordinary and popular sense'" are generally to be applied. *Id*. (citing Cal. Civil Code § 1638). "When a contract is reduced to writing, the intention of the parties is to be ascertained from the writing alone, if possible[.]" Cal. Civ. Code § 1639. "The clear and explicit meaning of these provisions, interpreted in their ordinary and popular sense, unless used by the parties in a technical sense or a special meaning is given to them by usage, controls judicial interpretation." *Waller*, 11 Cal. 4th at 18, (internal quotes and citations omitted). Put simply: "If contractual language is clear and explicit, it governs." *Minkler v. Safeco Ins. Co. of America*, 49 Cal. 4th 315, 321 (2010) (internal quotes omitted); *Bank of the West,* 2 Cal.4th at 1264.

An insurance company "can choose which risks it will insure and which it will not, and coverage limitations set forth in a policy will be respected." *Fidelity & Deposit Co. v. Charter Oak Fire Ins. Co.*, 66 Cal.App.4th 1080 (1998). A clear and unambiguous exclusion will be given its literal effect. *Regional Steel Corp. v. Liberty Surplus Ins. Corp*., 226 Cal.App.4th 1377, 1394 (2014). Broad language may properly be employed in an exclusion, so to have a broad effect. *Bay Cities Paving & Grading v. Lawyers' Mut. Ins. Co*. 5 Cal.4th 854, 868 (1993) (interpreting the word "related" to broad effect in an exclusionary clause); *Travelers*, 16 Cal.App.5th 1026, 1045 (2017) (California courts' "broad interpretation of 'arising out of' applies to both coverage provisions and exclusions"). Proper contract interpretation "must give effect to every part of the policy. . . . This includes giving

effect to exclusions." *Baldwin v. AAA Northern California, Nevada & Utah Ins. Exch.* 1 Cal.App.5th 545, 553 (2016).

## LEGAL ARGUMENT

Mt. Hawley agreed, in the Insuring Agreement of each of its Policies, to defend an insured against a "suit" seeking "damages because of …'property damage' to which this insurance applies." However, "[Mt. Hawley] will have no duty to defend the insured against any 'suit' seeking damages for … 'property damage' to which this insurance does not apply." [Exh. 3, at 7.] Because the Policies do not apply to any claim or suit for "property damage … arising directly or indirectly out of" a breach of contract or breach of warranty, Mt. Hawley owes no contractual duty to defend the Underlying Action.

The duty to defend, "though broad, is measured by the nature and kinds of risk insured by the policy." *Travelers*, 16 Cal.App.5th at 1037; *citing Hartford Cas. Ins. Co. v. Swift Distribution, Inc.* (2014) 59 Cal.4th 277, 287. "[T]he determination whether the insurer owes a duty to defend usually is made in the first instance by comparing the allegations of the complaint with the terms of the policy .... " *Waller*, 11 Cal.4th at 19. Facts extrinsic to the complaint and made known to the insurer may "also give rise to a duty to defend when they reveal a possibility that the claim may be covered under the policy." *Monticello Ins. Co. v. Essex Ins. Co.* (2008) 162 Cal.App.4th 1376, 1386. Where there is no possibility of coverage, there is no duty to defend. *Id.*; *see also Scottsdale Ins. Co. v. MV Transp.* (2005) 36 Cal.4th 643, 655 ("'The insurer has not contracted to pay defense costs' for claims that are not even potentially covered.")

### I. <u>MT. HAWLEY OWES NO DUTY TO DEFEND KILREA BECAUSE OF THE BREACH OF CONTRACT EXCLUSION</u>

The Mt. Hawley Policies' "Breach of Contract Exclusion" explicitly states that "This insurance does not apply, ***nor do we have a duty to defend*** any claim or 'suit' for … 'property damage' … ***arising directly or indirectly out of*** … a. Breach

of express or implied contract; [or] b. Breach of express or implied warranty…." (Prough Decl., Exh. 3 at 56.) (emphasis added). The term "arising out of" has been interpreted by California courts to "broadly link[] a factual situation with the event creating liability, and connotes only a minimal causal connection or incidental relationship". *Travelers*, 16 Cal.App.5th at 1045; *Office Depot*, 829 Fed.Appx. at 263. That "broad interpretation of 'arising out of' applies both to coverage provisions and exclusions." *Travelers*, 16 Cal.App. 5th at 1045 (collecting authority); *Southgate*, 106 Cal.App.4th at 301 (the "'arising out of' connective … broadly links' the exclusionary operative events with the exclusion.")

A. <u>The Underlying Action Falls Within the Breach of Contract Exclusion</u>

The Underlying Action filed by Horowitz against Defendants is expressly and directly premised upon claims that Kilrea breached its contract with Horowitz to properly renovate the Property, breaching both express provisions and implied warranties of the Contract. Indeed, each version of the complaint and amended complaint in the Underlying Action attached the written contract as Exhibit A, incorporated the contract by reference, alleged numerous breaches by Defendants of their duties thereunder throughout the general allegations of its pleading, and expressly incorporated those allegations into its cause of action for Breach of Contract and Breach of the Implied Warranty (and thereafter into each subsequent cause of action as well). Horowitz identified a number of express contractual obligations and implied warranties that Kilrea allegedly breached (SAC, ¶¶ 26, 27, 52, 53, 54, 56, 72), causing "property damage" (and various alleged economic losses such as overbilling, attorneys' fees, etc.[6]), and resulting in Horowitz's

---

[6] Purely economic claims like overbilling or loss of anticipated future value would not be claims for "property damage" (nor is overbilling an "occurrence"), regardless, and thus are not within the coverage grant. *See generally, Waller*, 11 Cal.4th at 26-27 ("It is well established that CGL policies do not provide coverage for intangible property losses, including economic losses"). *Even if* those were claims for "property damage," however, they too would be within the exclusion.

claimed damages. (*Id.*, ¶¶ 48-50, 56-57, 73-74).

Although the third cause of action (Negligence) or fourth cause of action (Negligent Supervision) are, at least, nominally pled in tort, they also fall squarely within the scope of the Breach of Contract exclusion for two reasons.

First, the exclusion as worded extends to the entire "Suit" "for … 'property damage' … arising directly or indirectly out of" the breach of contract or breach of warranty. The California Court of Appeal has recently affirmed that such a "catch-all" clause, barring coverage for an entire lawsuit premised on an excluded risk, are valid and enforceable according to their plain terms. *24th & Hoffman Investors*, 82 Cal.App.5th 834-39 (insurer owed no duty to defend lawsuit where excluded habitability claims were alleged); *see also S.B.C.C., Inc. v. St. Paul Fire & Marine Ins. Co.*, 186 Cal.App.4th 383, 397 (2010) (insurer owed no duty to defend lawsuit with claims for excluded intellectual property risks).

Second, even considering the particular third and fourth causes of action, as pled, each squarely "arises out of," that is, bears ***at least*** a "'slight connection' or an incidental relationship to" the Breach of Contract and Breach of Implied Warranty causes of action. The "Negligence" count "incorporates and re-alleges" the general allegations, as well as each of the first two causes of action. (SAC, Exh. 9, ¶ 75.) Defendants were "thereby under a duty to exercise due care to construct and provide materials for the Property in a good and workmanlike manner," but "were negligent and breached their respective duties of due care" in failing to do so. (*Id.*, ¶¶ 80-83.) No new facts or conduct are alleged, the cause of action re-packages and re-labels the contract and warranty claims already stated, and the damages described (*Id.* ¶¶ 83-84) are likewise duplicative or subsets of the damages identified above. (*See, e.g.*, ¶¶ 48-50, 57, 74.) Re-labeling the contract and warranty breaches as "negligence" is not enough to defeat the exclusion or give rise to a duty to defend. "It is not the underlying claims' legal theories that control coverage and exclusions, it is their facts." *Southgate*, 106 Cal.App.4th at 302; *Medill*, 143

Cal.App.4th at 831 ("the tort claims against the [insureds] are not independent of the breach of contract claims"); *James River*, 290 F.Supp.3d at 970 ("The question is whether the alleged [tort] conduct 'arises out of' the conduct underlying the breach of contract claim").

Likewise, the "Negligent Supervision" claim is derivative of the same conduct and same duties underlying the Breach of Contract and Breach of Implied Warranty causes of action. Again, not only does the cause of action expressly incorporate and reallege those paragraphs (SAC, Exh. 9, ¶ 85), but it adds no new facts or different types of damage. Plaintiff contends that "Under the Contract, Defendants undertook the responsibility to oversee the work of their own employees as well as the subcontractors hired to perform the work on the Property." (*Id.*, ¶ 86; *see also*, ¶¶ 27, 52, 53, 56 (referring to contractual duties of supervision, oversight and quality control with respect to work of subcontractors)). They were hired "to perform the work required at the Property in a good workmanlike manner free from defects" (*Id.*, ¶ 87), but because of their alleged incompetence "Plaintiff was harmed, as discussed above." (*Id.*, ¶ 89.) Because those claims "all arise out of the factual situation that constituted a breach of contract, they are excluded from coverage." *Nestle, USA*, 10 Fed.Appx. at 440; *Tri-Pacific Capital Advisors*, 2022 WL 423409,*6 ("The relationship between the claims and the agreement constitutes the 'minimal causal connection' necessary to be considered as 'arising from' the contractual liability owed"); *Associated Industries*, 536 F.Supp.3d at 685-86 (exclusion barred coverage for negligence and unjust enrichment claims that "incorporated the construction contract" and "shared the same operative factual allegations: that [builder] constructed [owner's] property in a defective manner.")

Horowitz's fifth cause of action, for "Declaratory Relief," is likewise uncovered. First, a declaratory relief claim is not a claim for "damages" and is thus outside the coverage grant. Second, this declaratory relief claim incorporates all prior allegations (SAC, Exh. 9, ¶ 91), incorporates the Contract yet again (*Id.*, ¶ 94),

then seeks various declarations regarding whether specific provisions (releasing certain claims and limiting liability) were valid and enforceable. (*Id.*, ¶¶ 95-102, 104-06.). To the extent Paragraph 103 seeks declaration "regarding the liability for losses, damages, costs and expenses … arising directly or indirectly from the work performed or materials supplied by Defendants," it is merely duplicative in referring to a portion ("liability") of the prior-pled damages claims.

B. <u>Breach of Contract Exclusions Are Valid and Enforceable</u>

Similar "breach of contract" exclusions have been applied by California and federal courts to bar coverage not just for claims specifically labelled "breach of contract" but also for alleged tort claims arising from the contractual relationship.

In *Southgate*, 106 Cal.App.4th at 301-02, the court considered an exclusion for liability "arising out of or related to construction … contracts or to any other contract for the purchase of goods or services." The underlying plaintiff sued Southgate not simply on contract theories but also "alleged negligence and alleged violation of a statutory duty…." Because the claims "arise out of or are related to a construction contract," the Court of Appeal found the claims to "fit comfortably within the construction contract exclusion." *Id.* at 302.

In *Medill*, 143 Cal.App.4th at 829-31, the court considered exclusionary language (a carve out from covered "Loss") for "Damages 'arising out of' breach of any contract, whether oral, written or implied, except employment contracts with individuals." The underlying plaintiffs sued the individual insureds not for breach of contract, but exclusively for tort claims for negligence and breach of fiduciary duty. *Id.* at 829. First (as here), the court noted, the underlying "litigation in its entirety 'arises out of' breach of contract." *Id.* Second, the court considered the "arising out of" language, which "requires [the court] to examine the conduct underlying the … lawsuit instead of the legal theories attached to the conduct." *Id.* at 830. The exclusion applied, because the individual insureds' "potential liability would not exist without the contracts Heritage and the Heritage entities entered into

in connection with the issuance and financing of the bonds." *Id.*

Federal courts applying California law have reached the same conclusion.

In *Associated Industries*, 536 F.Supp.3d at 683-86, Judge Huff of the Southern District of California applied this settled law in enforcing the same Mt. Hawley Breach of Contract exclusion at issue here. In that case, the insured (JGCI) "agreed to construct a building for [plaintiff] pursuant to a written construction agreement." *Id.* at 679. Plaintiff claimed the construction was defective and later sued the insured for breach of contract, negligence, unjust enrichment, and breach of two implied warranties regarding the quality of the workmanship. *Id.* at 680. The court held that Mt. Hawley's exclusion barred coverage and Mt. Hawley owed no duty to defend. After discussing the holdings of *Southgate*, *Medill*, and *Travelers* (with respect to "arising out of"), the court held "the Breach of Contract Exclusion bars coverage for each claim alleged against JGCI…." *Id.* at 686.

> Each claim shared the same operative factual allegations: that JGCI constructed [plaintiff's] property in a defective manner. [] As a result, each claim was, at a minimum, incident to or connected with [plaintiff's] allegations that JGCI breached various contracts or warranties by constructing the building in a defective manner. In fact, [plaintiff's] negligence and unjust enrichment claims, the only two claims that did not facially assert contract or warranty rights, both incorporated the construction contract.

*Id.* at 686. So too here. Horowitz's negligence, negligent supervision, and declaratory relief claims both incorporate the fact allegations and the breach of contract and breach of implied warranty claims, including the contract.[7]

---

[7] As noted above, the Fifth Circuit Court of Appeals also broadly enforced Mt. Hawley's exclusion as written, applying Texas law, affirming the district court decision in *Scottsdale Insurance Co. v. Mt. Hawley Insurance Co.*, 2011 WL 9169946, *8-9; *affirmed*, 488 Fed.Appx. 859; *see also HC Waterford Properties, LLC v. Mt. Hawley Ins. Co.*, 2009 WL 2600431, *6-7 (S.D. Fla. 2009) (Florida law) (enforcing exclusion for both breach of contract and negligence claims). A 2008 district court decision denied Mt. Hawley's motion for summary judgment, in *Mt. Hawley Ins. Co. v. Aguilar*, 2008 WL 11342656 (C.D. Cal. 2008). To the extent *Aguilar* is inconsistent with the body of more recent case law cited herein, the Fifth Circuit, or the published, carefully reasoned *Associated Industries* case from 2021, Mt. Hawley submits, *Aguilar*

The Ninth Circuit has repeatedly applied "breach of contract" exclusions to bar coverage for both contractual claims and derivative or related tort claims. In *Office Depot*, 829 Fed.Appx. 263-64, the Ninth Circuit enforced a similar exclusion (including "arising out of" language), holding that "These clauses also exclude coverage of tort claims which could not exist without the relevant underlying contracts." In *Trenches*, 575 Fed.Appx. at 741-42, the Ninth Circuit found that claims for trademark infringement and unfair competition were excluded because they "arose out of" the defendant's "alleged breach of the Franchise Agreement and Settlement Agreement." *Id.* at 741, *affirming* district court decision available at 2012 WL 12507967 (with further factual detail). In *Nestle, USA*, 10 Fed.Appx. at 439, the Ninth Circuit found the breach of contract exclusion to apply to Lanham Act claims where the alleged infringement was in violation of a licensing agreement. "Because Nestle's claims all arise out of the factual situation that constituted a breach of contract, they are excluded from coverage." *Id.*

Federal district courts in California have likewise enforced breach of contract exclusions, finding coverage barred for derivative and related tort claims as well.

In *Tripacific*, 2022 WL 423409, *6, Judge Selna of the Central District enforced a breach of contract exclusion: "Absent the agreement with [plaintiff] that allegedly created the fiduciary duty, there would be no liability that existed."

In *Autodistributors, Inc. v. Nationwide E&S Specialty*, 2022 WL 3648554, *4-5 (N.D. Cal. 2022), Judge Gilliam of this district enforced an exclusion for "'Personal and advertising injury' arising out of a breach of contract," and found coverage was barred for Lanham Act claims for slogan infringement, trade dress infringement, and misuse of advertising ideas, pled in the context of a franchise agreement dispute. "The question is whether the alleged conduct 'arises out of' the conduct underlying the breach of contract claim." *Id.* at *4 (citation omitted).

---

is an outlier and reflects the less persuasive authority.

In *AKN Holdings*, 2021 WL 2325647, *3, Judge Blumenfeld of the Central District applied a contract exclusion to bar coverage for a fraud claim: "Though the claims sound in fraud, they have far more than an 'incidental relationship' to the breached contracts. The claims would not exist without the [contracts]."

In *James River*, 290 F.Supp.3d at 968-69, Judge Fitzgerald of the Central District applied the exclusion to disparagement claims that paralleled a breach of a termination agreement: "the conduct underlying all of the claims … therefore has its 'origin in,' 'grows out of,' or 'has connection with' the conduct underlying the alleged breach." *Id.* at 970.

In *Penn-Star*, 2017 WL 6940535, *4, Judge Birotte of the Central District applied the exclusion to bar coverage: "Pixior's slander claim 'arises out of a breach of contract' and is excluded from coverage."

*In WG Hall*, 2017 WL 3782771, *6, Magistrate Judge Cousins of this district applied the exclusion to bar coverage for certain tort and statutory claims arising out of an employment dispute: "Absent an employment contract between the class plaintiffs and WGH, this case would not exist."

In *Spa de Soleil*, 787 F.Supp.2d at 1098, Judge Wilson of the Central District held that a policy exclusion for "failure to fulfill contractual obligations" barred coverage not only for contract claims but also for alleged tort claims that were "part and parcel of the contractual breaches."

Insureds sometimes invoke *Vandenberg v. Superior Court*, 21 Cal.4th 815 (1999), to argue that the distinction between contract and tort claims is immaterial for coverage purposes. But *Vandenberg* did not involve a breach of contract exclusion. Rather, it answered a different question of whether the standard CGL ***coverage grant*** language of "legally obligated to pay as damages" inherently limited coverage to tort versus contractual liabilities (as certain prior authority had found). *Id.* at 838-40. Indeed, the court noted that the coverage grant's breadth, "to include the insured's obligation to pay damages for breach of contract as well as for

tort," was subject to the "***limitations imposed by other terms of the coverage agreement… and by the exclusions***." *Id.* at 841 (emphasis added) (citations omitted). *Vandenberg* does not invalidate (or even discuss) breach of contract exclusions, and virtually all the authority cited herein post-dates that 1999 decision.

C. Mt. Hawley Owes No Duty to Defend or Duty to Indemnify

Mt. Hawley's Breach of Contract Exclusion bars all potential for coverage with respect to the Underlying Action. Thus, Mt. Hawley should be granted partial summary judgment on its first claim for relief for Declaratory Judgment.

Because the duty to defend is "broader" than the duty to indemnify, it necessarily follows that "where there is no duty to defend, there cannot be a duty to indemnify." *Harper Construction Co., Inc. v. National Union Fire Ins. Co.*, 377 F.Supp.3d 1134, 1152 (S.D. Cal. 2019); *citing Certain Underwriters at Lloyd's, London v. Superior Court*, 24 Cal.4th 945, 958 (2001). Thus, Mt. Hawley should also be granted partial summary judgment on its second claim for relief for Declaratory Judgment.

## II. ENFORCING AN EXCLUSION TO BAR COVERAGE FOR THE SUBJECT LOSS DOES NOT MEAN THAT ALL COVERAGE UNDER THE POLICIES IS "ILLUSORY"

Defendants pled a number of "affirmative defenses," and it is unknown which, if any, they may intend to invoke in opposing this motion. Defendants agreed to an early motion practice focused exclusively on the interpretation of the Breach of Contract Exclusion, so it is presumed that many of the defenses were pled protectively for potential use later in the case, if needed, and not to interfere with this agreed, early motion. Nonetheless, one issue that was raised by Defendant in the early meeting of counsel, and pled as the Second Affirmative Defense, is the potential defense of illusory coverage. Defendants plead no facts to support the defense, however, and it lacks merit under the applicable legal standards.

For a contract to be valid, "the parties must exchange promises that represent legal obligations. [] A contract is unenforceable as illusory when one of the parties

has the unfettered or arbitrary right to modify or terminate the agreement or assumes no obligations thereunder. [] Also, a contract is illusory where one party provides no legal consideration." *Harris v. TAP Worldwide, LLC*, 248 Cal.App.4th 373, 385 (2016) (citations omitted); *Scottsdale Ins. Co. v. Essex Ins. Co.*, 98 Cal.App.4th 86, 94-95 (2002).

Extending those principles to the insurance context, "an insurance policy provision is only illusory where it results in a 'complete lack of any policy coverage.'" *Franklin EWC, Inc. v. Hartford Financial Services Group, Inc.*, 506 F.Supp.3d 854, 861 (N.D. Cal. 2020) (collecting authority); *Secard Pools, Inc. v. Kinsale Ins. Co.*, 318 F.Supp.3d 1147, 1153-54 (C.D. Cal. 2017) (to be illusory, a policy "must afford no coverage whatsoever"; "thus, the mere possibility of some coverage is enough), *aff'd*, 732 Fed.Appx. 616 (9th Cir. 2018); *Jeff Tracy, Inc. v. U.S. Specialty Ins. Co.*, 636 F.Supp.2d 995, 1007 (C.D. Cal. 2009) (coverage "illusory when the insured 'receives no benefit' under the policy").

The fact that the Breach of Contract Exclusion bars coverage for Mr. Horowitz's specific lawsuit against Kilrea simply means ***this claim*** is not covered. It is not within the risk of loss assumed by Mt. Hawley under the express terms of these Policies. That does not mean that any or all the Mt. Hawley Policies "afford no coverage whatsoever." Quite the contrary, the Policies covered Kilrea (and its employees) for 5+ years for a wide range of potential risks and liabilities, according to their written contract terms--including (but not limited to) potential claims for premises liability, general third-party bodily injury and property damage liability (not otherwise excluded), workplace and jobsite accidents, and "personal and advertising injury" (not otherwise excluded) including its several categories of covered competitive, dignitary and intellectual property offenses. (See Exh. 3, at 22 (definition of "personal and advertising injury")). Clearly, suits (like this one) brought against Kilrea by a contractual counterparty (like Mr. Horowitz) and alleging, at their core, Kilrea's breach of contractual obligations (as here), are

excluded. That's what the Policies say. Mt. Hawley did not agree to undertake that risk of loss. That does not mean the Policies afforded no coverage, whatsoever. The Policies were not illusory.

Plaintiffs plead in boilerplate fashion, lacking any factual support, a number of other affirmative defenses alluding vaguely to various contract formation issues. *See, e.g.*, Defense nos. 9 (reformation), 12 (failure to disclose), 15 (coercion/undue influence/oppression), 22 (novation). No facts or evidence support any of those.

Notably, here, the Breach of Contract exclusion was present in the 2016-17 Policy. Kilrea renewed, and it was again present in the 2017-18 Policy. Kilrea renewed, and it was again present in the 2018-19 Policy. Kilrea renewed, and it was again present in the 2019-20 Policy. Kilrea renewed, and it was again present in the 2020-21 Policy. Kilrea renewed, and it was again present in the 2021-22 Policy (terminated mid-term by Kilrea on May 11, 2021).[8] It was not "slipped in" on Kilrea, or included by "mistake," over and over and over and over and over again.

In fact, the Mt. Hawley Quote for the first Kilrea Policy (2016-17), issued on January 18, 2016, specifically disclosed a list of "Exclusions in addition to those in the standard policy form," which included "CGL-350(08/09) Breach of Contract." (Prough Decl., Exhs. 14, 15.) The quote was forwarded to the wholesale insurance broker (*id.*, Exh. 15), who forwarded it to the retail insurance broker (*id.*, Exh. 16), who forwarded it to Mr. McAtamney (Kilrea's principal) (*id.*, Exhs.17, 18). On January 28, 2016, Mr. McAtamney returned certain signed forms to the retail

[8] Not to belabor the point or to burden the record, Mt. Hawley will not introduce herewith all the application, underwriting and placement documents for each of the Policy years. Suffice it to say, Kilrea was represented by sophisticated, experienced commercial insurance brokers each year, Mt. Hawley's policy forms (including the Breach of Contract Exclusion) were openly disclosed in its Quote and available for review by the insured and its brokers each year, and Kilrea never objected to any of the terms – until it cancelled the 2021-22 Policy mid-term because it needed a specific coverage (that another carrier was willing to provide). There was no mistake, fraud or coercion. If Kilrea attempts to make an issue of any of these contract formation defenses in its opposition, Mt. Hawley will support this offer of proof by submitting the detailed policy placement documentation for each policy year.

broker, including a form confirming "***I have read and understand the above exclusions and endorsements.***" (*id.*, Exh. 19 at 5.) On February 2, 2016 Kilrea (via its brokers) asked Mt. Hawley to bind coverage (*id.*, Exh. 20), on February 3, 2016, Mt. Hawley issued its binder (*id.*, Exh. 21), and on February 10, 2016, the 2016-17 Policy issued--exactly as described on the Quote and Binder, including, *inter alia*, the Breach of Contract Exclusion. (Appendix A.) There was no "mistake"; the Policy terms were exactly what Mt. Hawley promised and Kilrea agreed to. (The same holds for each renewal.)

It is settled law that "the receipt of a policy and its acceptance by the insured without an objection binds the insured as well as the insurer and he [or she] cannot thereafter complain that he [or she] did not read it or know its terms. It is a duty of the insured to read his [or her] policy." *Hadland v. NN Investors Life Ins. Co.*, 24 Cal.App.4th 1578, 1586 (1994); *Hackethal v. National Casualty Co.*, 189 Cal.App.3d 1102, 1112 (1987); *Aetna Casualty & Surety Co. v. Richmond*, 76 Cal.App.3d 645, 652 (1977).

Defendants' passing reference to reformation (Defense no. 9) is also factually unsupported and contrary to law. The purpose of the equitable remedy of reformation is "to ensure the contract, as reformed, reflects the parties' mutual intention." *Komorsky v. Farmers Ins. Exch.*, 33 Cal.App.5th 960, 974 (2019). The court has "no power to make new contracts for the parties. [] Rather, the court may only reform the writing to conform with the mutual understanding of the parties at the time they entered into it, if such an understanding exists." *Id., citing Hess v. Ford Motor Co.*, 27 Cal.4th 516, 524 (2002). Regardless, the statute of limitations for reformation is three years, and Kilrea has known the Breach of Contract Exclusion was on his Policies since at least 2016. *North Star Reins. Corp. v. Superior Court*, 10 Cal.App.4th 1815, 1822-23 (1992).

Finally, Defendants allege conclusory defenses of waiver (Defense No. 10) and estoppel (Defense No. 3). Again, no facts support those defenses, and they fail

as a matter of law. Mt. Hawley promptly and consistently reserved its rights in a series of detailed letters. (Prough Decl., Exhs. 10, 11, 12, 13.) Waiver is the "intentional relinquishment of a known legal right after knowledge of the facts." *Waller*, 11 Cal.4th at 31. The burden is on the proponent of waiver "to prove it by clear and convincing evidence that does not leave the matter to speculation…" *Id.* It "depends solely on the intention of the waiving party." *Id. quoting Velasquez v. Truck Ins. Exch.*, 1 Cal.App.4th 712, 722 (1991). Mt. Hawley's letters refute any such showing.

Estoppel requires some "wrongful conduct" on the part of the party to be estopped, paired with "detrimental reliance" by the proponent. *Waller*, 11 Cal.4th at 34. No facts support either. Mt. Hawley has defended the Underlying Action under a reservation of rights for over three years; and its reservation of rights letters have set forth and discussed the applicable policy provisions (including the Breach of Contract Exclusion), from the start. Regardless, doctrines of implied waiver and estoppel "cannot create coverage where none exists." *Supervalu, Inc. v. Wexford Underwriting Managers, Inc.*, 175 Cal.App.4th 64, 77 (2009); *Udinsky v. State Farm Fire & Cas. Co.*, 2019 WL 1017606, *11 (N.D. Cal. 2019).

In short, none of Defendants' affirmative defenses have any legal or factual support, and therefore cannot negate the clear application of the Breach of Contract Exclusion to the claims asserted against the Defendants in the Underlying Action.

**CONCLUSION**

For each of the foregoing reasons, Mt. Hawley requests an order granting its motion for partial summary judgment.

Dated: September 1, 2023 PROUGH LAW, APC

By: /s/ Michael D. Prough
Michael D. Prough

Attorneys for Plaintiff
Mt. Hawley Insurance Company

# APPENDIX A

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# BREACH OF CONTRACT EXCLUSION

This insurance does not apply, nor do we have a duty to defend any claim or "suit" for "bodily injury," "property damage," or "personal and advertising injury" arising directly or indirectly out of the following:

**a.** Breach of express or implied contract;

**b.** Breach of express or implied warranty;

**c.** Fraud or misrepresentation regarding the formation, terms or performance of a contract; or

**d.** Libel, slander or defamation arising out of or within the contractual relationship.

**ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.**