Brandt L. Wolkin, Esq. (SBN 112220)
Catharine M. Tolson, Esq. (SBN 271223)
WOLKIN CURRAN, LLP
111 Maiden Lane, Sixth Floor
San Francisco, CA 94108
T: 415/982-9390
F: 415/982-4328
bwolkin@wolkincurran.com
ctolson@wolkincurran.com

Counsel for defendants
KILREA CONSTRUCTION, INC. and
JOHN P. McATAMNEY individually and doing
business as KILREA CONSTRUCTION

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA-**

**OAKLAND DIVISION**

MT. HAWLEY INSURANCE COMPANY, an Illinois Corporation,

Plaintiff,

v.

KILREA CONSTRUCTION, INC., a California Corporation, and JOHN P. McATAMNEY, individually and doing business as KILREA CONSTRUCTION;

Defendants.

Case No.: 4:23-cv-01335-JST

**DEFENDANTS KILREA CONSTRUCTION, INC. and JOHN P. McATAMNEY, individually and doing business as KILREA CONSTRUCTION'S OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

Date: October 12, 2023
Time: 02.00 p.m.
Dept.: CR 6,
The Honorable Judge Tigar

# TABLE OF CONTENTS


TABLE OF AUTHORITIES ..... 4

I. INTRODUCTION ..... 7

II. FACTS ..... 8

A. The Underlying Construction Project ..... 8

B. Kilrea Buys An Insurance Policy From Mt. Hawley ..... 9

III. LEGAL ARGUMENT ..... 10

A. Standard on Summary Judgment ..... 10

B. Mt. Hawley's Interpretation of the Phrase "Breach of Contract" is Too Broad to Be Conscionable. This Court Should be Guided by the *Aguilar*, not the *Associated* Ruling. ..... 11

C. None of the California Cases cited by Mt. Hawley Support the Relief Requested in this Litigation ..... 12

1. Mt. Hawley Cites a Plethora of Cases Applying the Breach of Contract Exclusion to Personal and Advertising Injury Cases ..... 13

2. Mt. Hawley Also Cites to Cases Upholding the Breach of Contract Exclusion in the Context of D&O and Professional Liability Policies ..... 15

D. The Exclusion Must Be Narrowly Construed ..... 16

E. Mt. Hawley's Application of the Breach of Contract Exclusion Would Render Coverage Illusory Under the Policy. ..... 18

1. Mt. Hawley's Application of the Breach of Contract Exclusion Violates Reasonable Expectations of the Insured and Renders the Policy Meaningless ..... 18

2. Mt. Hawley's Proposed Application of the Exclusion Extinguishes All Major Coverages Sought by a Contract Insured ..... 22

a. There Would Be No Coverage for "Bodily Injury" Claims ..... 22

b. There Would be No Products Completed Operations Hazard Coverage ..... 23

c. There Would Be No Additional Insured Coverage ..... 24

d. Various Other Coverage Grants Would Also be Voided ..... 25

CONCLUSION.......................................................................................................26

# TABLE OF AUTHORITIES

## CASES

*24th & Hoffman Invs., LLC v. Northfield Ins. Co.*,
82 Cal.App.5th 825 (2022) ........ 16

*AKN Holdings, LLC v. Great Am. E & S Ins. Co.*,
2021 WL 2325647 (C.D. Cal. May 14, 2021) ........ 15

*Anthem Elecs., Inc. v. Pac. Emp'rs Ins. Co*.,
302 F.3d 1049 (9th Cir. 2002) ........ 10

*Associated Indus. Ins. Co. v. Mt. Hawley Insurance Co.*,
536 F.Supp 3d 676 (S. D. Cal. 2021) ........ 12

*Autodistributors, Inc. v. Nationwide E&S Specialty*,
2022 WL 3648554 (N.D. Cal. 2022) ........ 14

*Blackhawk Corp. v. Gotham Ins. Co.*,
54 Cal.App.4th 1090 (1997) ........ 21

*Church Mutual ins. Co. v. U.S. Liability Ins. Co.*,
347 F.Supp.2d 880 (2004) ........ 17, 18

*Energy Ins. Mutual Limited v. Ace American Ins. Co.*,
14 Cal.App.5th 281 (2017) ........ 20

*Howell v. State Farm Fire & Casualty Co.*,
218 Cal.App.3d 1446 (1990) ........ 18

*James River Ins. Co. v. Medolac Lab'ys*,
290 F. Supp. 3d 956 (C.D. Cal. 2018) ........ 14, 15

*John's Grill, Inc. v. The Hartford Fin. Servs. Grp., Inc.*,
86 Cal. App. 5th 1195 (2022) ........ 20, 21, 24

*Julian v. Hartford Underwriters Ins. Co.*,
35 Cal.4th 747 (2005) ........ 21

*Manzarek v. St. Paul Fire & Marine Ins. Co.*,
519 F.3d 1025 (9th Cir. 2008) ........ 10

*Martinez v. Idaho Cntys. Reciprocal Mgmt. Program*,
999 P.2d 902 (Idaho 2000) ........ 22

*Medill v. Westport Ins. Corp*.,
143 Cal.App.4th 819 (2006) ........ 16

*Monticello Ins. Co. v. Mike's Speedway Lounge, Inc.*,
949 F.Supp. 694 (S.D. Ind. 1996) ........ 22

*Montrose Chem. Corp. v. Superior Court,*
6 Cal. 4th 287, 300 (1993) .......... 10, 11

*Mt. Hawley Insurance Co. v Aguilar*
2008 WL 11342656 .......... 11, 12

*Nestle USA, Inc. v. Travelers Cas. & Sur. Co. of Am.,*
10 F. App'x 438 (9th Cir. 2001) .......... 14

*Office Depot, Inc. v. AIG Specialty Ins. Co.,*
829 F. App'x 263 (9th Cir. 2020) .......... 13, 14

*Peleg v. Neiman Marcus Group, Inc.,*
204 Cal.App.4th 1425 (2012) .......... 24

*Penn-Star Ins. Co. v. Caden Companies, Inc*.,
2017 WL 6940535 (C.D. Cal. Dec. 28, 2017) .......... 15

*Pressman v. Aetna Cas. & Sur. Co.,*
574 A.2d 757 (R.I. 1990) .......... 22

*Producers Dairy Delivery Co. v. Sentry Ins. Co.,*
41 Cal.3d 903 (1986) .......... 17

*Reid v. Google, Inc.,*
50 Cal.4th 512 *(2010)*, fn. 8 .......... 18

*Shade Foods. Inc. v. Innovative Products Sales & Marketing, Inc.,*
78 Cal. App. 4th 847 (1st Dist. 2000) .......... 18, 19

*Smith Kandal Real Estate v. Continental Cas. Co.,*
67 Cal.App.4th 406 (1998) .......... 17

*Southgate Recreation & Park Dist. v. California Assn. for Park & Recreation Ins.,*
106 Cal.App.4th 293 (2003) .......... 13

*Spa De Soleil, Inc. v. Gen. Star Indem. Co.,*
787 F. Supp. 2d 1091 (C.D. Cal. 2011) .......... 15, 16

*Trenches, Inc. v. Hanover Ins. Co.,*
575 F. App'x 741 (9th Cir. 2014) .......... 14

*TriPacific Cap. Advisors, LLC v. Fed. Ins. Co.,*
2022 WL 423409 (C.D. Cal. Jan. 28, 2022) .......... 15

*W.G. Hall, LLC v. Zurich Am. Ins. Co.,*
2017 WL 3782771 (N.D. Cal. Aug. 31, 2017) .......... 15, 16

**STATUTES**

CA Business & Professions Code § 7159 (b) .......... 23

**TREATISES**

Personal Injury Liability Coverage, California Practice Guide: Insurance Litigation Ch. 7C-C........................................................................................ 13

Defendants KILREA CONSTRUCTION, INC., and JOHN P. MCATAMNEY, individually and doing business as KILREA CONSTRUCTION (collectively, "Defendants") by and through their counsel, Wolkin Curran, LLP, hereby oppose plaintiff MT. HAWLEY INSURANCE COMPANY'S Motion for Partial Summary Judgment for the following reasons.

## I. INTRODUCTION

This is a case of an insurance carrier arguing an unconscionably overbroad interpretation of an exclusion on its policy to escape a coverage obligation to its insured. Mt. Hawley argues that simply because Kilrea performed the construction at issue pursuant to a written contract, coverage is denied under the Breach of Contract exclusion.

Kilrea Construction, Inc. ("Kilrea") has done everything right here. It applied for Commercial General Liability coverage with Mt. Hawley to protect itself from liabilities for bodily injury or property damage arising from its contractor operations. A condition to that coverage was that Mt. Hawley would not underwrite general contractors who refused to enter into written subcontracts with the trades that the general contractor hires, and Kilrea was required to submit a copy of its subcontract to prove to Mt. Hawley that it would comply with that condition. Over the course of years, Mt. Hawley collected premiums from Kilrea, with the premium increasing where Kilrea's contractual sales increased.

However, when Kilrea was sued for construction defects relating to a multi-million dollar residence in San Francisco, Mt. Hawley denied coverage by reasoning that the policy's breach of contract exclusion applied to preclude coverage for the entire action, including the negligence claims, simply because Kilrea performed that construction pursuant to a contract with the owner. If Mt. Hawley's reasoning were to stand, there would never be coverage for any contractor who performed work under a contract for construction, and therefore every contractor insured would be uninsured for bodily injury, construction defect claims and suits, and would be without additional insured coverage. The policy would be rendered completely illusory. Mt. Hawley cannot have it both ways: it cannot require contracts be used by its insureds, collect increased premiums based on the profits earned

under those contracts, and then be permitted to deny coverage simply because a contract was utilized. Mt. Hawley's application would not only bankrupt its insured, it would also turn the construction industry on its head. It simply cannot be sanctioned by this court.

## II. FACTS

### A. The Underlying Construction Project

The underlying action involves construction defects alleged at the Horowitz residence located at 2555 Divisadero Street in San Francisco, California. The Horowitz Living Trust purchased the subject property in 2010. (See Prough Declaration in support of Mt. Hawley's Motion ("Prough Dec."), Exhibit 9 ¶ 1.)

The historic residence built in 1940 is in the upscale neighborhood of Pacific Heights. Although plaintiff purchased the property for $4,450,000, it was recently appraised by plaintiff's expert at over $16 million. The home is just under 6,000 square feet and boasts nearly 360-degree views of the San Francisco Bay from its rooftop deck.

Kilrea Construction was hired as the general contractor to provide labor, materials, and supervision to add a fourth-floor room, roof deck, and elevator. Plaintiff alleges that Kilrea Construction initially estimated that the project would cost approximately $1,250,000. (Prough Dec. Exhibit 9 ¶¶ 26, 27, 28.) Despite that estimate, plaintiff contends that he paid over $4,000,000 for the addition to the residence.

Initially, Kilrea Construction was a sole proprietorship started by John Paul McAtamney. After the residence was already under construction, John Paul McAtamney converted the sole proprietorship into a corporation.

Kilrea Construction and plaintiff entered into a construction contract on or about August 2, 2016. (Prough Dec. Exhibit 9 ¶ 26.) As part of the contract, plaintiff agreed to pay Kilrea Construction a monthly fee of $26,000, not to exceed eleven months, for project management. *Id.* In addition to said management fee, plaintiff would be responsible for paying a set hourly fee for the work performed by Kilrea Construction's carpenters. According to the contract, the work was to start on August 8, 2016, and be completed on or about July of 2017. (Prough Dec. Exhibit 9, Exhibit A thereto at ¶ 1.2.) Pursuant to the

contract, subcontractors hired by Kilrea Construction would need to be approved by plaintiff. (Prough Dec. Exhibit 9, Exhibit A thereto at ¶ 5.)

**B. Kilrea Buys An Insurance Policy From Mt. Hawley**

In order to be considered by Mt. Hawley, Kilrea was required to provide a detailed application ending with the warranty regarding the truthfulness of all facts stated. (See Declaration of John P. McAtamney in Support of Opposition ["McAtamney Dec."] at ¶ 4). As part of the initial underwriting process with Mt. Hawley, Kilrea's insurance broker, McGovern Insurance Agency ("McGovern"), was required to provide Mt. Hawley with a fully executed copy of a subcontract between Kilrea and its subcontractors. *Id.* ¶5. Mt. Hawley would not underwrite general contractors who refused to enter into written subcontracts with the trades that the general contractor hires. *Id.*

On February 5, 2016, Coastal Brokers Insurance Services, Inc. ("Coastal"), the wholesale broker acting as the intermediary between McGovern and Mt. Hawley, wrote McGovern on Mt. Hawley's behalf, advising that Kilrea's coverage has been bound by Mt. Hawley. *Id.* ¶6; Exhibit C. Coastal remained as the "middle person" between McGovern and Mt. Hawley throughout the time Mt Hawley insured Kilrea. See, *e.g.*, Coastal's confirmation of coverage for the 2017-2018 policy year. Wolkin Declaration at ¶3; and McAtamney Declaration at ¶6; Exhibit C.

Coastal's February 5, 2016 letter sets forth the conditions under which McGovern was authorized to issue Certificates of Insurance evidencing Mt. Hawley's coverage. McAtamney Declaration at ¶6; Exhibit C. The third condition, set forth on page 2, states:

> No additional insureds are to be shown on the certificate unless they are specifically endorsed to the policy or there is a blanket additional insured endorsement in a written contract in force which requires additional insured status on the policy. (Id.)

Consistent with Mt. Hawley's guidelines, on August 5, 2016, McGovern prepared a Certificate of Liability Insurance for Kilrea to provide to Jeffrey Horowitz, a client who was remodeling his San Francisco home located at 2555 Divisadero Street. Id. ¶ 7. The Horowitz-Kilrea contract required Kilrea to obtain $5 million CGL coverage, with that

coverage being primary and noncontributory. *Id.* The Primary and Noncontributory endorsement to the Mt. Hawley policy allows the Mt. Hawley policy to be primary coverage for Kilrea from which no other carrier could seek contribution, but only if the insured "agreed in writing in a contract or agreement that this insurance would be primary and would not seek contribution from any other insurance available to the additional insured." Wolkin Dec. at ¶ 4.

The first policy that Mt. Hawley issued to Kilrea had an estimated premium of $9,000. McAtamney Dec. at ¶ 8, Exhibit E. As can be seen on that policy's declarations page, Mt. Hawley's premium is derived by multiplying a "contractor rating" by gross revenue—*i.e.*, the sales revenue from construction contracts. Id. The estimated exposure for Kilrea's 2016-17 policy was $1,500,000. Id.

After each policy year, Mt. Hawley performs an audit of revenue received. Id. ¶9. The 20176-2017 audit results show that Kilrea was charged an additional $9,667.78 by Mt. Hawley. *Id.* The increased premium is a function of Kilrea's contract revenue more than doubling the amount estimated, totaling $3,061,385. *Id.*

## III. <u>LEGAL ARGUMENT</u>

### A. Standard on Summary Judgment

In an action based on diversity, such as this, California law applies to the interpretation of the Policy. *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). Mt. Hawley can only prevail on the duty to defend if it can "conclusively negate coverage as a matter of law." *Anthem Elecs., Inc. v. Pac. Emp'rs Ins. Co.*, 302 F.3d 1049, 1060 (9th Cir. 2002). The insured must only "prove the existence of a *potential for coverage*, while the insurer must establish *the absence of any such potential*." *Montrose Chem. Corp. v. Superior Court,* 6 Cal. 4th 287, 300 (1993) (emphasis in original). Facts that merely tend to "show that the claim is not covered, or may not be covered, but are insufficient to eliminate the possibility that [the nature of the action] will fall within the scope of coverage," do not negate a duty to defend. *Id.* If the evidence produced does not allow the court to "eliminate the possibility that the insured's conduct falls within the

coverage of the policy, 'the duty to defend is then *established,* absent additional evidence bearing on the issue.'" *Id.* at 301 (emphasis in original), (quoting *Horace Mann Ins. Co.,* 4 Cal. 4th at 1085). Importantly, "[a]ny doubt as to whether the facts establish the existence of the defense duty must be resolved in the insured's favor." *Id.* at 299-300. An insurer is only excused from its duty to defend when "*by no conceivable theory"* can the third party complaint "*raise a single issue which could bring it within the policy coverage*." *Id.* at 300 (emphasis in original).

### B. Mt. Hawley's Interpretation of the Phrase "Breach of Contract" is Too Broad to Be Conscionable. This Court Should be Guided by the *Aguilar*, not the *Associated* Ruling.

The motion before the Court is Mt. Hawley's third Motion for Summary Judgment filed in a California Federal District Court seeking to enforce its interpretation of the breach of contract exclusion that Mt. Hawley has inserted in its CGL policies issued to General Contractors. Mt. Hawley's requested interpretation of this exclusion would be to preclude coverage for any instance where there is liability alleged against any contractor insured that performed work pursuant to contract. Effectively, this interpretation would result in a denial of coverage to any contractor insured.

Mt. Hawley's first attempt at arguing this application of the exclusion failed. Judge Carney's 2008 opinion in *Mt. Hawley Insurance Co. v Aguilar*, not reported in Fed. Supp., 2008 WL 11342656[1] rejected Mt. Hawley's interpretation. The Court's reasoning is set forth below:

> …[T]he Court finds that Mt. Hawley's interpretation of the "breach of contract" exclusion is so broad that that it is unreasonable. Mt. Hawley's interpretation of the exclusion would essentially defeat coverage in all instances because virtually all property damage that a subcontractor-insured would seek coverage for could be characterized as arising directly or indirectly out of a breach of contract or implied warranty. Since a subcontractor almost always enters an oral or written contract with a general contractor when performing work on a construction project, the Court is hard-pressed to identify a scenario in which an insured-subcontractor would be entitled to coverage under Mt. Hawley's interpretation. Because a contract always governs the terms of the subcontractor's performance, a breach of contract claim is almost always the direct or indirect impetus for a

[1] Attached to the Wolkin Dec. as Exhibit 5 for the Court's ease of reference.

> subcontractor to seek coverage. Accordingly, the "breach of contract" exclusion cannot reasonably be interpreted to defeat all coverage for Ms. Yu's allegations of property damage caused by fire, mold and water infiltration. 2008 WL 11342656 at *3.

Accordingly, the Court found that the "breach of contract" provision could not be reasonably interpreted to defeat all allegations of property damage, as urged by Mt. Hawley in this instance.

Mt. Hawley's second attempt resulted in a favorable ruling in *Associated Indus. Ins. Co. v Mt. Hawley Insurance Co.*, 536 F.Supp 3d 676 (S. D. Cal. 2021). Mt. Hawley was successful in convincing the court that the "arising out of" language in its Breach of Contract exclusion was sufficient for the court to find no duty to defend the general contractor where "each claim was, at a minimum, [incident to or connected with] [developers] allegations that general contractor breach various contracts or warranties by constructing the building effective manner.

As the Court is aware, the *Associated* ruling is not binding precedent on this Court, and is mere persuasive evidence only. In light of the opposite result having been reached in *Aguilar,* the fact that none of the California cases cited by Mt. Hawley support their requested relief, and the authorities cited herein that mandate a narrow application of this endorsement so as not to render coverage under the policy illusory, Kilrea urges the Court rule against Mt. Hawley consistent with *Aguilar* and the authorities cited herein.

**C. None of the California Cases cited by Mt. Hawley Support the Relief Requested in this Litigation**

Mt. Hawley cites this Court to Ninth Circuit and California authority upholding Breach of Contract exclusions. Kilrea takes no issue with the holdings of many of the cases cited. Nor is Kilrea requesting this Court for a blanket holding that Breach of Contract Exclusions are never unenforceable. That said, however interesting any of the cases cited by Mt. Hawley may be, not one of them has resulted in an insured being deprived of the essential coverages purchased, and thus the cases have no relevance to this Court's determination. Moreover, in not a single case cited under California law was the insured a

general contractor under a comprehensive general liability policy being denied benefits for any project for which he obtained a written contract.

### 1. Mt. Hawley Cites a Plethora of Cases Applying the Breach of Contract Exclusion to Personal and Advertising Injury Cases

The large majority of California cases cited do not involve the property damage or bodily injury provisions so vital to a general contractor but, rather, are cases where the breach of contract exclusion is interposed in relation to "Coverage B," the personal injury protection provided by standard CGL policies, as many—if not most—of the claims arising under the personal injury provision do not arise out of contract. Among the defenses covered by the personal injury insuring agreement in a CGL provision are: libel, slander, invasion of privacy, nuisance, trespass, advertising liability, false imprisonment, and malicious prosecution (*See* C. Personal Injury Liability Coverage, California Practice Guide: Insurance Litigation Ch. 7C-C.)

Similarly, the cases Mt. Hawley cites involve breach of contract exclusions that could be applied to some, but not all claims, preserving to the insured those claims within their reasonable expectation of coverage. The following cases cited by Mt. Hawley apply the breach of contract exclusion to a personal injury insuring agreement:

The case *Southgate Recreation & Park Dist. v. California Assn. for Park & Recreation Ins.,* 106 Cal.App.4th 293, 302 (2003) did not analyze a commercial general liability policy at all. It dealt with the terms of a joint powers agreement and an annually renewed memorandum of coverage offered by a joint powers authority that administers a liability risk-pooling arrangement on behalf of its approximately 60 park and recreation member districts. *Id.* at 297. In that case, the Court upheld a breach of contract exclusion for personal and advertising injury where the allegations were a contractor's failure to retain funds under a contract and failure to ensure an adequate payment bond for the contract.

In *Office Depot, Inc. v. AIG Specialty Ins. Co.,* 829 F. App'x 263 (9th Cir. 2020), the Ninth Circuit enforced a breach of contract exclusion in relation to a False Claims Act brought by the State of California. As noted by the Court, "in Office Depot's own words, the

heart of the suit is the contention that Office Depot overcharged California government entities under the terms of particular contracts." *Id.* at 264.

In *Trenches, Inc. v. Hanover Ins. Co.,* 575 F. App'x 741 (9th Cir. 2014), an unpublished decision, the Ninth Circuit found that claims for trademark infringement and unfair competition were excluded by the breach of contract exclusion. In that specific factual context, the Court found that because the action involved allegation that the insured violated its contractual obligations by continuing to use a third party's mark and trade dress, in violation of the specific terms of a Franchise Agreement and Settlement Agreement, the breach of contract exclusion applied. *Id.* at 741-742. However, many, if not the majority, of trademark infringement and unfair competition claims do not arise from contracts being breached. By their very nature, these claims involve competitors taking something that belongs to someone else, with no contract involved.

In *Nestle USA, Inc. v. Travelers Cas. & Sur. Co. of Am.,* 10 F. App'x 438, 439 (9th Cir. 2001), also unpublished, the Ninth Circuit found the breach of contract exclusion within the Personal and Advertising Injury Coverage B to apply to Lanham Act claims where the alleged infringement was in violation of a licensing agreement. *Id.*

In *Autodistributors, Inc. v. Nationwide E&S Specialty*, 2022 WL 3648554, *4-5 (N.D. Cal. 2022), which is up for appeal, Judge Gilliam of this district enforced an exclusion for "personal and advertising injury" arising out of a breach of contract. At issue in that case was the terms of a franchising agreement, and each party's alleged performance and breach thereof. The Complaint at issue in that action alleged that Plaintiffs had used t trademarks and service marks "in violation of its Franchise Agreement and the Lanham Act" "by using them outside of the agreed upon uses. Accordingly, the liability at issue in that action arose directly out of the terms of Franchise Agreement. *Id.* at *4. I

In *James River Ins. Co. v. Medolac Lab'ys*, 290 F. Supp. 3d 956, 970 (C.D. Cal. 2018), a termination Agreement provided that defendant "shall not disparage" the plaintiff in that action, and Plaintiff sued the defendant for violation of that agreement by disparaging it. These allegations triggered a coverage obligation under Coverage B for "personal injury"

but because they were based on a violation of the Termination Agreement, coverage was found to be precluded by the Policy's Breach of Contract Exclusion. *Id.* at 969-970.

In *Penn-Star Ins. Co. v. Caden Companies, Inc*., No. CV1702369ABPLAX, 2017 WL 6940535, at *5 (C.D. Cal. Dec. 28, 2017), the breach of contract exclusion once again was limited to the Personal and Advertising Injury provisions.

### 2. Mt. Hawley Also Cites to Cases Upholding the Breach of Contract Exclusion in the Context of D&O and Professional Liability Policies

In addition to the large number of cases citing the application of the breach of contract exclusion to personal injury provisions, Mt. Hawley also relies on cases in the directors and officers and professional liability coverage arena, once again coverages where claims arising from a breach of contract do not predominate.

Again, none of these cases involve general contractors being deprived of coverage for contracts central to their business activities.

In *W.G. Hall, LLC v. Zurich Am. Ins. Co.,* 2017 WL 3782771, at *1 (N.D. Cal. Aug. 31, 2017), the Court applied the exclusion in a professional liability policy to bar coverage for certain tort and statutory claims arising out of an employment dispute for violations of an employment contract.

In *TriPacific Cap. Advisors, LLC v. Fed. Ins. Co.*, No. SACV21919JVSJDEX, 2022 WL 423409, at *1 (C.D. Cal. Jan. 28, 2022), a breach of contract exclusion in a Director's and Officers (D&O) policy was enforced where the underlying suit involved breach of fiduciary duty claims in violation of an Employment Agreement.

In *AKN Holdings, LLC v. Great Am. E & S Ins. Co.*, 2021 WL 2325647, at *1 (C.D. Cal. May 14, 2021), aff'd, 2022 WL 2610243 (9th Cir. July 8, 2022), the Court applied a breach of contract exclusion to bar coverage for a fraud claim under a directors and officers insurance policy.

In *Spa De Soleil, Inc. v. Gen. Star Indem. Co.,* 787 F. Supp. 2d 1091, 1098 (C.D. Cal. 2011), the Court upheld the breach of contract exclusion in the Professional Liability

///

coverage provided by the policy, holding such claims are not within the scope of a policy insuring against "wrongful acts." *Id.* at 1098.

In *24th & Hoffman Invs., LLC v. Northfield Ins. Co.,* 82 Cal.App.5th 825, 832, 298 (2022), review denied (Dec. 14, 2022) the Court was not dealing with a breach of contract exclusion at all. The policy at issue was a comprehensive general liability coverage that provided coverage for bodily injury, property damage, and personal injury caused by an occurrence, but included a "catch-all" provision that excluded coverage arising out of habitability claims. *Id.* at 821. The Court upheld the "catch-all" and found no duty to defend the insureds for a habitability suit.

In *Medill v. Westport Ins. Corp*., 143 Cal.App.4th 819 (2006), the relevant dispute revolved around whether the claims fell within the policy's coverage provision, not whether an exclusion applied. *Id.* at 829. The relevant policy language in the Directors & Officers portion of the policy at issue defined the word "loss," and stated that "loss" would not include "Damages 'arising out of' breach of any contract...." did not because the underlying litigation in that case arose out of a breach of contract (failure to perform contractual obligation to repay bonds), even if none of the causes of action were for "breach of contract." *Id. W.G. Hall, LLC v. Zurich Am. Ins. Co.,* 2017 WL 3782771, at *6 (N.D. Cal. Aug. 31, 2017) citing *Medill, supra,* 143 Cal.App.4th at 830. The Court found no coverage because of the underlying litigation was for failure to perform a contractual obligation to repay bonds. *Id.*

**D. The Exclusion Must Be Narrowly Construed**

Mt. Hawley argues for an expansive interpretation of the breach of contract exclusion that would effectively eliminate coverage in all instances where the insured performs work under a contract. Mt. Hawley argues that only a "minimal causal connection or incidental relationship" is required between the claim and the contract in order for the Breach of Contract exclusion to apply because the exclusion applies to any claim "arising directly or indirectly out of" breach of express or implied contract. (MSJ 20:1-9.)

///

Mt. Hawley's requested interpretation is at odds with direct authority dictating that the phrase "arising out of" must be read narrowly in the context of an exclusion. *Church Mutual ins. Co. v. U.S. Liability Ins. Co.*, 347 F.Supp.2d 880 (2004). The *Church* case was a contribution action brought by a defending carrier Church Mutual Insurance against a non-defending carrier US Liability Insurance Co. (USLIC). USLIC took the position that the Breach of Contract exclusion in its policy precluded any coverage obligation to their mutual insured. *Id.* at 884. The Court was tasked with interpreting whether the phrase "arising out of" should be applied broadly, as urged by USLIC such that it would preclude coverage, or narrowly. *Id.*

The Court found that when reading the policy as a whole, the breach of contract exclusion is ambiguous and "susceptible to two interpretations: the expansive interpretation urged by USLIC, which eliminates three expressly stated bases for coverage, and a narrower interpretation, which, without eviscerating coverage, accounts for the clearly stated exclusion for breach of contract and claims arising from it which are more than just incidentally related thereto." *Id.* at 886. The Court rejected USLIC's broad interpretation, and instead found that a narrow interpretation is appropriate for two reasons. First, the Court reasoned "exclusions are strictly construed against the insurer, and if ambiguous, must be resolved against the insurer and in favor of coverage." *Id.*, citing *Smith Kandal Real Estate v. Continental Cas. Co.,* 67 Cal.App.4th 406, 414 (1998). Second, "the evisceration of coverage, which results if USLIC's interpretation is adopted, indicates that the parties apparently did not intend the exclusion to be read so expansively." *Id.* Accordingly, the Court found that reading an exclusion so broadly as to completely eliminate coverage sought and paid for by an insured is improper, and contrary to the reasonable expectation of the insured. The Court stated, "[i]t is a basic principle of insurance contract interpretation that doubts, uncertainties and ambiguities arising out of policy language ordinarily should be resolved in favor of the insured in order to protect his *reasonable* expectation of coverage." *Id.,* citing *Producers Dairy Delivery Co. v. Sentry Ins. Co.,* 41 Cal.3d 903, 912 (1986) (emphasis in original).

As in *Church,* Mt. Hawley argues for a broad application of the breach of contract exclusion because it argues the term "arising out of" requires only a minimal causal link. That interpretation would eviscerate coverage under all major coverage grants under the Policy, and would be contradictory to the Kilrea's expectation that it bought and paid for insurance to cover its operations – all of which are done pursuant to industry required contracts. As in *Church,* a narrow application of the breach of contract exclusion must be applied, such that Mt. Hawley has a duty to defend the non-contract based causes of action against Kilrea.

**E. Mt. Hawley's Application of the Breach of Contract Exclusion Would Render Coverage Illusory Under the Policy.**

**1. Mt. Hawley's Application of the Breach of Contract Exclusion Violates Reasonable Expectations of the Insured and Renders the Policy Meaningless**

Mt. Hawley's enforcement of the Breach of Contract exclusion so as to preclude coverage for all causes of action, including negligence, because of the existence of a contract for the work performed flies in the face of the reasonable expectation of the insured. There are two black letter principles in insurance law that are paramount to this analysis: First, "the policy or its endorsements cannot be so interpreted as to become meaningless, or to withhold coverage which the [layperson] would normally expect from it, " and second that "[t]he courts will not sanction a construction of the insurer's language that will defeat the very purpose or object of the insurance." *Howell v. State Farm Fire & Casualty Co.,* 218 Cal.App.3d 1446, 1468 (1990), disapproved on another issue, *Reid v. Google, Inc.,* 50 Cal.4th 512, 532 (2010), fn. 8.

Mt. Hawley is asking this court to construe this exclusion in a manner that would defeat the objectively reasonable expectations of the insured, where to do so would render the coverage described in the policy as meaningless and therefore illusory. *Shade Foods, Inc. v. Innovative Products Sales & Marketing, Inc.,* 78 Cal. App. 4th 847, 874 (1st Dist. 2000) (holding that an interpretation that would render the objectively reasonable

expecttions of the insured for coverage under the policy "meaningless" is an example of an illusory coverage.

In *Shade,* the insured was in the business of processing almonds that it bought from a manufacturer, then incorporated into nut clusters, which it then sold to General Mills to make into cereal. *Id.* General Mills found wood splinters in the almond clusters, and it was determined the splinters had come from the almond processing plant where *Shade* purchased the almonds. *Id.* at 862. Shade submitted a claim to the almond manufacturer's insurance carrier, Northbrook, in part for damages resulting from having to destroy the stock of nut clusters at its facility. The policy at issue promised to "pay for direct physical loss of or damage to covered property … caused by or resulting from any covered cause of loss" with "stock" listed in the declarations as having "special" coverage within a limit of $3 million of insurance. *Id.* at 872. The policy defined "stock" as "merchandise held in storage or for sale, raw materials and goods in process or finished ...." *Id.* An exclusion on the policy, Exclusion 3(c)(2) provided that coverage would not apply to "loss or damage caused by or resulting from [¶] c. Faulty, inadequate or defective: ... [¶] (2) ... workmanship ...." *Id.* As part of its claim, Shade sought property insurance coverage for the cereal in stock at its facility that had to be destroyed because the wood splinters had been incorporated therein. *Id.* at 867.

The Court held that the exclusion had to be interpreted narrowly, and consideration given to the insured's business operation as a whole - processing almonds for others. *Id.* at 874. With that context, the Court found that insurance coverage for "stock" would be "meaningless" if the exclusion were broadly construed to encompass Shade's stock on the premises, for which it had secured coverage. *Id.* The Court in *Shade* looked at two factors in determining the existence of "illusory coverage": (1) the business of the insured; and (2) the procedures of the insured in carrying on its business. *Id.* at 874. Here, the business of the insured is general contracting, and the procedures for carrying on the business of general contracting *require* the insured to have written contracts for work over $500, which is the entirety of Kilrea's operations. Accordingly, an exclusion on the policy that erases coverage

for the main risks of that business, just because of the existence of a contract for work, renders this policy completely meaningless.

Mt. Hawley claims that enforcement of its Breach of Contract exclusion cannot be illusory because it leaves *some* coverage in place. The Fourth District Court of Appeals recently completely rejected an identical argument attempted by an insurance carrier in *John's Grill, Inc. v. The Hartford Fin. Servs. Grp., Inc.,* 86 Cal. App. 5th 1195, 1222 (2022), as modified (Jan. 23, 2023)(review granted).

In *John's Grill,* the Court held that a specified causes of loss clause in an endorsement providing limited virus coverage was unenforceable under illusory coverage doctrine for the restaurant's business loss claim relating to losses from the lockdown during the Covid-19 pandemic. At issue was the Policy's Limited Fungi or Virus Coverage Endorsement, which included provisions (1) that add limited coverage in certain circumstances for "loss or damage" "caused by" "virus" (the Limited Virus Coverage), subject to certain conditions requiring that the virus was the "result of" one or more of a list of enumerated causes (the Specified Causes Clause). However, none of the listed enumerated causes had anything to do with a virus, or the biological processes that actually cause a virus. Accordingly, Hartford sought to deny coverage, and John's Grill filed suit alleging, among other things, that the Endorsement for "Virus Coverage" did not in fact provide virus coverage, and was therefore illusory.

The carrier made the same argument that Mt. Hawley is attempting here, "so long as there is a possibility of coverage under some combination of covered risks and specified causes … the illusory coverage doctrine does not apply." *Id.* at 1222. The Court rejected that argument. In doing so, the Court held that not only does that argument "fl[y] in the face of the principle that we must give effect to all the words of the Policy, but is precisely the kind of "heads I win, tails you lose" position the illusory coverage doctrine forbids." *Id.,* citing Cf. *Energy Ins. Mutual Limited v. Ace American Ins. Co.* 14 Cal.App.5th 281, 306 (2017). The Court further cautioned that "[i]nsurers cannot take in premium for a coverage

///

grant that names a specifically covered risk—here virus contamination—and then justify denying coverage for it under all circumstances." *Id.*

Here, Mt. Hawley makes the same argument that was rejected by the Court in *John's Grill.* In an attempt to defeat the illusory argument and argues a more limited scope of this exclusion, Mt. Hawley argues:

> [t]hat does not mean that any or all the Mt. Hawley Policies "afford no coverage whatsoever." Quite the contrary, the Policies covered Kilrea (and its employees) for 5+ years for a wide range of potential risks and liabilities, according to their written contract terms--including (but not limited to) potential claims for premises liability, general third-party bodily injury and property damage liability (not otherwise excluded), workplace and jobsite accidents, and "personal and advertising injury" (not otherwise excluded) including its several categories of covered competitive, dignitary and intellectual property offenses. (See Exh. 3, at 22 (definition of "personal and advertising injury")). Clearly, suits (like this one) brought against Kilrea by a contractual counterparty (like Mr. Horowitz) and alleging, at their core, Kilrea's breach of contractual obligations (as here), are excluded. That's what the Policies say. Mt. Hawley did not agree to undertake that risk of loss. (Mt. Hawley Motion MPA at 21:17-22:2.)

Mt. Hawley thus attempts to defeat the illusory argument with unsubstantiated hypothetical instances wherein coverage *could* remain under the policy. However, more than "a mere drafting fiction" is required to overcome an illusory coverage argument. *John's Grill, supra,* 86 Cal. App.5th at 1222, citing *Julian v. Hartford Underwriters Ins. Co.* (2005) 35 Cal.4th 747, 760, as modified (May 5, 2005). An insurance carrier will not prevail against an illusory coverage argument based on "unsubstantiated speculation, untethered to the insured's actual business circumstances as underwritten by the insurer." *Id.*, citing *Blackhawk Corp. v. Gotham Ins. Co.,* 54 Cal.App.4th 1090, 1096–1097 (1997) (in light of insured's actual business "as developer of raw land," subsidence exclusions not illusory when applied to housing development on property sold by insured.)

Second, *John's Grill* rejected the argument that if you "squint hard enough," you will find coverage for other "oddball scenarios," and that "sliver of coverage" should defeat an illusory argument because it means there is not a "complete lack of any policy coverage." *Id.* at 222-223. More than "a mere drafting fiction" is required to an illusory coverage argument. *Id.* citing *Julian v. Hartford Underwriters Ins. Co.*, *supra*, 35 Cal.4th at p. 760.

The *John's Grill* holding is consistent with out of state authorities on the meaning of illusory coverage. (See *Martinez v. Idaho Cntys. Reciprocal Mgmt. Program,* 999 P.2d 902, 907 (Idaho 2000) (finding that coverage is illusory where "it is extremely minimal and affords no realistic protection," even where an insurer argues "there might be some small circumstance where coverage could arguably exist"); *Pressman v. Aetna Cas. & Sur. Co.,* 574 A.2d 757, 759 (R.I. 1990) (coverage is illusory when policy terms "preclude coverage in almost any circumstance"); and *Monticello Ins. Co. v. Mike's Speedway Lounge, Inc.,* 949 F.Supp. 694, 699, 701 (S.D. Ind. 1996) (coverage is illusory when it "would not pay benefits under any reasonably expected set of circumstances," and holding that an insurer cannot defeat an illusory coverage argument by "conceiving of a single hypothetical situation to which coverage would apply").

### 2. Mt. Hawley's Proposed Application of the Exclusion Extinguishes All Major Coverages Sought by a Contract Insured

The very reason that a contractor seeks commercial general liability insurance is to protect itself from liability, the two significant risks being (1) a subcontractor or employee getting hurt on the job, and (2) the risk of being sued for construction defects after completion. Additionally, contractors need to be able to provide additional insured coverage to those with whom they contract in the industry. If Mt. Hawley's interpretation of the Breach of Contract exclusion is permitted to stand, it would wipe out any possibility of coverage in any of these circumstances, as well as a variety of miscellaneous coverage grants.

#### a. There Would Be No Coverage for "Bodily Injury" Claims

As a general practice, and as required by Mt. Hawley, Kilrea entered into written subcontracts in its capacity as a general contractor. (McAtamney Dec. ¶ 5.) Those subcontracts had provisions regarding allocation of risk and safety.

In order for Mt. Hawley's argument to be internally consistent, it would have to deny any duty to defend bodily injury suffered by a subcontractor working on site no matter how grievous the injury. This risk is significant given that subcontractors cannot sue their

employer because of workers' compensation protections and, thus, it is common to sue general contractors for failure to supervise the work pursuant to a written subcontract agreement. Accordingly, given Mt. Hawley's interpretation of "arising out of", if a subcontractor employee was injured on the job and sued Kilrea in its role as general contractor for failure to properly supervise it, there would be no coverage for that injury, no matter how grievous, as it arose out of a contract and in the words of the badly reasoned *Associated* opinion, "incident to or having connection with" with Kilrea's contractual obligations.

Accordingly, the entirety of coverage A, protecting Kilrea in the event of bodily injury occurring on the construction job, is inapplicable if the work associated with the injury was being performed pursuant to written contract rather than an illegal verbal one.[2]

### b. *There Would be No* **Products** *Completed Operations Hazard Coverage*

There would also not be any coverage available for construction defect claims or suits brought after completion. These lawsuits and claims are more common now than ever, and the desecration of completed operations coverage for contractors under the positions argued by Mt. Hawley would have devastating consequences.

The exception to exclusion j(6), which restores coverage for "property damage" included in the "products-completed operations hazard" would be nullified by Mt. Hawley's proposed application of the Breach of Contract Exclusion. (See Mt. Hawley Exhibit 3 at p. 5). The very definition of what qualifies as a "products completed operations hazard" requires a contract between the insured and the property owner:

> 16. "Products Completed Operations Hazard"'
>
> Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:
>
> **(1)** Products that are still in your physical possession;

---

[2] *See* CA Business & Professions Code § 7159 (b) requiring written contract for any home improvement work where the value of the labor and materials is $500 or more.

> Or
>
> **(2)** Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:
>
> > **(a)** When all of the work called for in your contract has been completed.
> >
> > **(b)** When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.
> >
> > **(c)** When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project. (See Mt. Hawley Exhibit 3 at p. 16).

Accordingly, if Mt. Hawley's application of the Breach of Contract exclusion were to stand, and coverage could be denied where the liability arises out of the work performed under a contract, there would never be completed operations coverage for any contractor insured. This would completely void coverage for contractors who are sued for construction defects after completion, and leave an entire industry of contractors uninsured in those lawsuits. It simply does not stand to reason.

As in *John's Grill,* Mt. Hawley took a premium for a coverage grant that specifically covers completed operations for projects wherein there is a written contract, then seeks to justify denying coverage for it under all circumstances. "Words of promise which by their terms make performance entirely optional with the 'promisor'... do not constitute a promise.'" *Peleg v. Neiman Marcus Group, Inc.,* 204 Cal.App.4th 1425, 1438 (2012) (internal citation omitted).

**c. There Would Be No Additional Insured Coverage**

If Mt. Hawley's breach of contract exclusion is applied as they argue it should be, there would never be additional insured coverage under the policy. All of the Mt. Hawley policies have Additional Insured Endorsements requiring a written contract for coverage to apply. [3] (See Exhibits 2 and 3 the Wolkin Declaration). However, those endorsements, CG

---

[3] As to the first two years of coverage, there was only one additional insured endorsement, CG 20 33. The third year has the CG 20 33, but also has CG2037 is in the policy, but not on the list of forms. The last two years have both the CG2037 and the CG2033.

2037 (Wolkin Dec. Exhibit 2) and CG 2033 (Wolkin Exhibit 3) only apply if the insured has "agreed in writing in a contract or agreement that such person or organization be added as an additional insured under your policy." One is left with the following question: *what protections are afforded additional insureds under the Mt. Hawley policies if a precondition for that coverage is a written agreement and any liability arising out of a written agreement is excluded by the policy?*

**d. Various Other Coverage Grants Would Also be Voided**

In addition to completely extinguishing coverage for the three biggest risks for a contractor insured (bodily injury, completed operations construction defect suits, and additional insured coverage), Mt. Hawley's position would also nullify coverage in various other common instances. For example, there could never be a primary or non-contributory coverage obligation under the Policy because that endorsement requires a written agreement wherein the contractor insured agreed to said obligation. (Wolkin Dec. Exhibit 1.) Thus, by Mt. Hawley's reasoning, the existence of the contract requiring primary and non-contributory coverage would, itself, serve to extinguish coverage completely.

Mt. Hawley's position would also erase coverage for "insured contracts," under the exception to the Insuring Agreement's contractual liability exclusion. This exception grants coverage for liability for damages assumed in an "insured contract" so long as the bodily injury or property damage occurs after entering into the contract, and the liability is assumed in a contract or agreement that falls within the definition of "insured contract," which is broadly defined by endorsement on the policy (Wolkin Declaration Exhibit 4.) It cannot stand to reason that the exception to that exclusion requires an "insured contract," but the existence of that contract precludes coverage,

The bottom line is that Kilrea is a contractor who performs construction pursuant to contracts. It is difficult to imagine how any conduct by Kilrea could ever fall outside if its operations a contractor, all of which operations occur pursuant to contract. Mt. Hawley has offered no evidence to demonstrate any realistic prospect that Kilrea would ever benefit

from coverage under the Policy. The sweeping language of the Breach of Contract exclusion renders the policy completely illusory.

## CONCLUSION

Kilrea respectfully asks this Court to deny Mt. Hawley's overbroad application of the "breach of contract" exclusions, as it cannot be reasonably interpreted to defeat all allegations of property damage. Permitting Mt. Hawley to deny coverage for a general contractor insured simply because the work was performed pursuant to a written contract is an unconscionably overbroad and self-serving application of that exclusion, and would have devastating consequences for not only Kilrea, but all contractors insured by Mt. Hawley, who would then find their CGL coverage effectively gutted. Contracts are essential to business activities, and it would be outrageous for an insurance company to require contracts on the one hand, profit from the contractual sales under those contracts by charging higher premiums, and then be permitted to deny coverage because of the very existence of that contract.

Respectfully submitted,

Dated: September 15, 2023

WOLKIN CURRAN, LLP

***/s/ Brandt L. Wolkin***

By: ______________________________

Brandt L. Wolkin, Esq.
Catharine M. Tolson, Esq.

Counsel for defendants KILREA CONSTRUCTION, INC. and JOHN P. McATAMNEY individually and doing business as KILREA CONSTRUCTION