Michael D. Prough (SBN 168741)
mdp@proughlaw.com
Dean C. Burnick (SBN 146914)
dcb@proughlaw.com
PROUGH LAW, APC
1550 Parkside Dr., Ste. 200
Walnut Creek, CA 94596
Telephone: 925-433-5894
Facsimile: 925-482-0929

Attorneys for Plaintiff
MT. HAWLEY INSURANCE COMPANY

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MT. HAWLEY INSURANCE COMPANY, an Illinois Corporation,<br><br>Plaintiff,<br><br>v.<br><br>KILREA CONSTRUCTION, INC., a California Corporation, and JOHN P. McATAMNEY, individually and doing business as KILREA CONSTRUCTION;<br><br>Defendants. | Case No. 23-cv-01335-JST<br><br>REPLY MEMORANDUM OF MT. HAWLEY INSURANCE COMPANY IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT<br><br>Date: October 12, 2023<br>Time: 2:00 p.m.<br>Dept.: Courtroom 6<br><br>Judge: Hon. Jon S. Tigar |

# TABLE OF CONTENTS


| | Page |
|---|---|
| INTRODUCTION .................................................................. | 1 |
| I. THE PLAIN LANGUAGE OF THE CONTRACT GOVERNS | 3 |
| A. Plaint Contract Language Is Given Effect ..................... | 4 |
| B. A Clear Exclusion Is Enforceable, Even If It Is Broad ...... | 5 |
| C. There Is No. "Ambiguity in the Abstract" or "Ambiguity Se ............................................................... | 6 |
| D. The Policies' Coverage Was Not Illusory ..................... | 8 |
| II. CASE LAW OVERWHELMINGLY SUPPORTS ENFORCING BREACH OF CONTRACT EXCLUSIONS, LIKE MT. HAWLEY'S ............................................ | 10 |
| A. Mt. Hawley's Exclusion Has Been Enforced by Five Federal District Court Judges and Twice by the Fifth Circuit Court of Appeals ....................................... | 10 |
| 1. *Associated Industries* Is More Persuasive than *Aguilar* .................................................. | 10 |
| 2. Other Federal District Court and Fifth Circuit Decisions Have Given Effect to Mt. Hawley's Exclusion ................................................ | 11 |
| B. Similarly Worded Exclusions Have Been Enforced by California State Courts, the Ninth Circuit, and California Federal District Court Judges .................................... | 13 |
| III. KILREA'S OPPOSITION EVIDENCE RAISES NO ISSUE OF FACT ............................................................. | 14 |
| CONCLUSION ................................................................ | 15 |

## TABLE OF AUTHORITIES

**Page**

**Cases**

*Aerojet-General Corp. v. Transport Indemnity Co.*
17 Cal. 4th 38 (1997) ………………………………………………………... 6

*AKN Holdings, LLC v. Great American E & S Ins. Co.*
2021 WL 2325647 (C.D. Cal. 2021) ……………………………………….. 13

*American Way Cellular, Inc. v. Travelers Prop. Cas Co.*
216 Cal.App.4th 1040 (2013) ……………………………………………….. 2

*Associated Industries Ins. Co. v. Mt. Hawley Ins. Co.*
536 F. Supp.3d 676 (S.D. Cal. 2021)…..……………………………………… 3, 10, 11

*Baldwin v. AAA Northern California, Nevada & Utah Ins. Exchange*
1 Cal.App.5th 545 (2016) ….…………………………………………………... 2, 6

*Bank of the West v. Superior Court*
2 Cal.4th1254 (1992)………………………………………………………..... 6

*Bay Cities Paving & Grading v. Lawyers' Mut. Ins. Co.*
5 Cal.4th 854 (1993) ………………………………………………………...... *passim*

*Blasiar, Inc. v. Fireman's Fund Ins. Co.*
76 Cal.App.4th 748 (1999) …………………………………………………….. 7

*Certain Underwriters at Lloyd's, London v. Superior Court*
24 Cal.4th 945 (2001) ………………………………………………………….. 6

*Church Mutual Ins. Co. v. U.S. Liability Ins. Co.*
347 F. Supp.2d 880 (S.D. Cal. 2004) ……………………………………….. 5, 13

*Continental Cas. Co. v. City of Richmond*
763 F.2d 1076 (9th Cir. 1985) ………………………………………………… 5

*Continental Cas. Co. v. Phoenix Constr. Co.*
46 Cal.2nd 423 (1956) ………………………………………………………… 5

*CSAA v.Superior Court*
117 Cal.App.3d 855 (1986) …………………………………………………… 7

*Fidelity & Depo. CO. v. Charter Oak Fire Ins. CO.*
66 Cal.App. 4th 1080 (1988) …………………………………………………... 14

*Forecast Homes, Inc. v. Steadfast Ins. Co.*
181 Cal.App.4th 1466 (2010) ………………………………………………….. 6

*G.K. Skaggs. Inc. v. Hartford Cas. Ins. Co.*
579 Fed. Appex 542 (9th Cir. 2014) …………………………………………… 13

*Harris v. TAP Worldwide, LLC*
248 Cal.App.4th 373 (2016)………………………………………………… 9

*Hartford Cas. Ins. Co. v. Swift Distribution, Inc.*
59 Cal.4th 277 (2014) ……………………………………………………….. 4

*HC Waterford Properties, LLC v. Mt. Hawley Ins. Co.*
2009 WL 2600431 (S.D. Fla. 2009) ………………………………………... 11

*John's Grill, Inc. v. The Hartford Fin. Servs. Grp., Inc.*
86 Cal.App.5th 1195 (2022) ………………………………………………… 9

*Los Angeles Lakers, Inc. v. Federal Ins. Co.*
869 F. 3d 795 (9th Cir. 2017) …………………………………………...... 5

*McLellan v. Fitbit, Inc.*
2018 WL 1913832, *3 (N.D.. Cal. 2018) …………………...…………….... 9

*Medill v. Westport Ins. Corp.*
143 Cal.App. 4th 819 (2006)……………………………………………... 13

*Mt. Hawley Insurance Company v. Aguilar*
2008 WL 11342656 (C.D.Cal. 2008)……………………………………….. 3, 11

*Mt. Hawley Ins. Co. v. Huser Construction Co.*
2019 WL 1255756 (S.D. Tex 2019), *aff'd.,* 797 Fed. Appx. 183 (5th Cir. 2020)…………………………………………………………………… 12

*Mt. Hawley Ins. Co. v. Slay Engineering*
390 F. Supp.3d 794 (W.D. Tex 2019) ……………………...……………… 12

*Nestle, USA, Inc. v. Travelers Casualty & Surety Co.*
10 Fed. Appx 438 (9th Cir. 2001) …………………………………………... 13

*Office Depot, Inc. v. AIG Specialty Ins. Co.*
829 Fed.Appx. 263 (9th Cir. 2020).………………………………………… 13

*Olympic Ins. Co. v. Employers surplus Lines Inc. Co.*
126 Cal.App.3d 593 (1981) ………………………………………………… 5

*Regional Steel Corp. v Liberty Surplus Ins. Corp.*
226 Cal.App.4th 1377 (2014)…………………………………………….….. 5

*Rosen v. State Farm General Ins. Co.*
30 Cal.4th 1070 (2003) …………………………………………………… 1, 6

*Scottsdale Ins. Co. v. Mt. Hawley Ins. Co.*
2011 WL 9169946 (S.D. Tex. 2011)…………………………….............. 12

*Scottsdale Ins. Co. v. Mt. Hawley Ins. Co.*
488 Fed.Appx. 859 (5th Cir. 2012) ………………………………………… 12

*Southgate Recreation & Park Dist. v. Cal. Assn. for Park & Recs Ins.*
106 Cal.App.4th 293 (2003)………………………………………………… 13

*Spa de Soleil, Inc. v. General Star Indem. Co.*
787 F.Supp. 1091 (C.D. Cal. 2011)………………………………………… 13

*Travelers Cas. & Sur. Co. v. Emps. Ins. of Wausau*
130 Cal.App.4th 99 (2005) ………………………………………………….. 14

*Travelers Property Cas. Co. v. Actavis, Inc.*
16 Cal.App.5th 1026 (2017)……..…………………………………………… 2, 5

*Trenches, Inc. v. Hanover Insurance Company*
575 Fed.Appx. 741 (9th Cir. 2014)………………………………………… 13

*Waller v. Truck Ins. Exch.*
11 Cal.4th 1 (1995)…………………………………………………………... 5

*Wallman v. Suddock*
200 Cal.App.4th 1288 (2011) ……………………………………………….. 7

*Westoil Terminals Co., Inc. v. Industrial Indem. Co.*
100 Cal.App.4th 139 (2003) ………………………………………………… 5

**Statutes**

Cal. Civ, Code § 1605 ………………………………………………………. 9

Cal. Civ. Code §1614 ……………………………………………………… 9

Cal. Civ. Code § 1636 ………………………………………………………. 4

Cal. Civ. Code § 1639 ………………………………………………………. 4

Code Civ. Proc. § 1858 ……………………………………………………….. 5

**Rules**

Cal. R. Ct. 8.1115(e) ………………………………………………………….. 9

**INTRODUCTION**

Kilrea's main argument, that Mt. Hawley's "Breach of Contract Exclusion" is too broad and should be judicially excised from the contract, boils down to an improper argument for "ambiguity in the abstract." *Bay Cities Paving etc. v. Lawyers Mutual Ins. Co.*, 5 Cal.4th 854, 867-8 (1993). Kilrea never once mentions ***the facts of this case*** or the ***language of this exclusion***--which are the principal bases upon which the duty to defend must be determined. The reason is evident. The facts of this case are squarely within the excluded risk, as described in the plain language of this exclusion. This lawsuit is well within the scope of what Mt. Hawley explicitly excluded from coverage under these Policies.

One need not speculate about the outer boundaries of what hypothetical, other claims the exclusion (or Kilrea's "straw-man" caricatures of it[1]) might exclude. This case falls nowhere near the boundary. It involves a lawsuit ***by one contracting party*** (Horowitz), ***against the other contracting party*** (Kilrea), expressly alleging, at its core, that Kilrea ***breached the obligations it had contractually assumed***. Kilrea's assertion that enforcing the exclusion would turn the "construction industry on its head" is speculative and irrelevant. The notion that a CGL Policy is not a performance bond, or that business risks are properly retained by the insured, are not exotic concepts. Regardless, no statute or public policy mandates that insurers must cover insureds for breaching their contracts, or that all policies must be rewritten to that effect. *Rosen v. State Farm General Ins. Co.*, 30 Cal.4th 1070, 1078 (2003) ("we do not rewrite any provision of any contract

---

[1] From the second sentence of its brief to the end, Kilrea repeatedly ascribes "straw man" arguments to Mt. Hawley and mischaracterizes the exclusion, as barring coverage for any claim any time ***there exists a contract*** anywhere in the fact pattern, or to any damages claimed by anyone arising out of ***work performed under a contract***. That is not what the exclusion says, nor what Mt. Hawley has argued. It is a ***breach of contract*** (or warranty) exclusion. It applies when the insured is sued for breaching its contractual obligations (as here). Businesses (even builders) are regularly sued by people they do not have contracts with, for torts or statutory claims that have nothing to do with an alleged breach of contract. Examples include common, every day, high dollar claims, like premises liability (a visitor is injured at the insured's offices), jobsite worker injuries (not to an employee of the insured), toxic torts, pollution, nuisance, defamation, malicious prosecution, competitive and intellectual property claims (e.g. copyright, invasion of privacy), damages to neighboring property (dust, noise, damage, trespass), injuries to jobsite visitors and to passersby, and myriad others. These are not imaginary, far-fetched claims, but real, everyday CGL claims, that are not premised on a breach of contract or of contractual duties.

… for any purpose"); *Baldwin v. AAA Northern Calif. etc.*, 1 Cal.App.5th 545, 554 (2016) (noting "strong public policy" of enforcing plain contract language in exclusion).

Kilrea nowhere offers an alternative second, proposed, textually-supported interpretation of the disputed contract language, much less a reasonable one--the first predicate to any argument for "ambiguity." *Bay Cities Paving*, 5 Cal.4th at 868. Its invocations of "reasonable expectations" and other ambiguity tie-breaking rules are premature. There is no ambiguity. The language is clear. Broad, and clear. Broad does not equal ambiguous, even in an exclusion. *Id.* at 868 (rejecting argument that "related" was ambiguous; broad language "may be used for that very reason—its breadth—to achieve a broad purpose"); *Travelers Prop. Cas. Co. v. Actavis, Inc.*, 16 Cal.App.5th 1026, 1045 (2017) (giving broad effect to "arising out of" in products exclusion). Nor does Kilrea argue, or show, how some proposed viable, narrower interpretation of the exclusion (that gives effect to all its wording) would not ***still*** bar coverage for ***this lawsuit***. Mr. Horowitz sued Kilrea for breaching the contract between them, causing damage to his property. The suit is exactly what is excluded, under ***any*** permissible reading of this exclusion.

Kilrea notes that the endorsement operates to exclude some of the coverage that was otherwise afforded under the CGL coverage form. For example, Kilrea argues, it excludes some of the "completed operations" coverage.[2] But that is not an argument for ambiguity. That is what exclusionary endorsements do: limit or bar coverage that would otherwise exist. That "conflict" does not create an ambiguity. Under settled law, "if there is a conflict in meaning between an endorsement and the body of the policy, ***the endorsement controls***." *American Way Cellular, Inc. v. Travelers Prop. Cas. Co.*, 216 Cal.App.4th 1040, 1057 (2013) (emphasis added). Mt. Hawley's endorsement expressly advises: "**THIS ENDORSEMENT CHANGES THE POLICY,**

---

[2] Kilrea overstates the point, claiming the Breach of Contract Exclusion would eviscerate all coverage for any claim occurring after it completed its work on a job. (Opp. at 23-24.) This is another straw-man argument--responding to an overbroad description of the exclusion that ignores the Policy language or anything Mt. Hawley has truly argued. Any number of strangers to Kilrea (with no contract) could sue Kilrea for injury or damages they sustained (due to a latent defect) after Kilrea's work was completed (whether on Mr. Horowitz's house, or any of Kilrea's other completed jobs). A visitor could suffer injury on the property. A neighboring house could be damaged or homeowner injured by a fire, a pipe rupture, or a collapse. A passerby could be hit by a loose tile falling from the roof. None of those plaintiffs would sue Kilrea on any contract.

**PLEASE READ IT CAREFULLY**." (Dkt. #27 at 33.)(Emphasis in original.) Consistent with the contract language and settled California law, the endorsement controls.

Kilrea suggests that there is an even split between the two courts that have applied Mt. Hawley's exclusion, with this Court now set to cast the tie-breaker. (Opp. at 11-12.) Kilrea ignores the decisions of the district courts in Florida and Texas (three times), and of the Fifth Circuit (twice), that have enforced this exclusion. The rules of contract interpretation for Florida and Texas applied in those decisions track California's rules. Even as between the two California decisions, the detailed, published, recent decision in *Associated Industries Ins. Co. v. Mt. Hawley Ins. Co.* 536 F.Supp.3d 676 (S.D. Cal. 2021), quoting and discussing the policy language, the facts, and recent case authority on breach of contract exclusions, is better reasoned and more persuasive than the short, unpublished minute order, citing no case authority, in *Mt. Hawley Ins. Co. v. Aguilar*, 2008 WL 11342656 (C.D. Cal. 2008). As for the two California Court of Appeal decisions, four Ninth Circuit decisions, and many California federal district court rulings cited by Mt. Hawley, Kilrea seeks to distinguish them by arguing that none of them involved "property damage" claims. (Opp. at 13-16.) That is a distinction without a difference. Each of them broadly enforced breach of contract exclusions, strongly supporting Mt. Hawley's motion.

Finally, Kilrea argues that the exclusion cannot be enforced because it would render coverage "illusory." (Opp. at 18-25.) It would not. Kilrea's fallacy is a common one. The present focus is on ***this*** claim--the one that materialized. Because coverage is excluded, the insured recovers nothing and cries "illusory coverage." In fact, the Policies provided Kilrea with over 5 years of coverage for a wide range of risks. A policy is not illusory just because a claim that materialized was excluded.

Mt. Hawley's motion for summary judgment should be granted.

## I. THE PLAIN LANGUAGE OF THE CONTRACT GOVERNS

Kilrea posits, in the abstract, an over-broad application of the exclusion detached from its actual wording or from any argument Mt. Hawley has made—then spends virtually its entire brief

reacting to that "straw-man"[3] argument. Examples are too numerous to count.[4] The fallacy permeates the brief. Notably, Kilrea filed a 26-page brief ostensibly arguing for a "duty to defend," without ***once*** quoting the allegations of the underlying complaint or the relevant language of the Policy. Instead, reacting to its own, phantom, overbroad mis-characterizations of the exclusion, and speculating how it might apply in the abstract to other, different, hypothetical claims, Kilrea argues for a finding of "ambiguity" or for the Court to void the endorsement under illusory coverage doctrine. Both arguments lack merit.

A. Plain Contract Language Is Given Effect

California's statutory rules of contract interpretation provide that "the mutual intention of the parties at the time the contract is formed governs interpretation." *Hartford Cas. Ins. Co. v. Swift Distribution, Inc.*, 59 Cal.4th 277, 288 (2014) (*citing* Civ. Code § 1636). That intent "is to be inferred, if possible, solely from the written provisions of the contract." *Bay Cities Paving*, 5 Cal.4th at 698. "The 'clear and explicit' meaning of these provisions, interpreted in their 'ordinary and popular sense,'" generally "controls judicial interpretation." *Id.* (*citing* Civ. Code § 1639.) Courts "look first to the language of the contract in order to ascertain its plain meaning or the meaning a layperson would ordinarily attach to it." *Hartford*, 59 Cal.4th at 288; *quoting Waller v.*

---

[3] A straw-man argument is "when someone distorts their opponent's argument by oversimplifying or exaggerating it … and then refutes this 'new' version of the argument." https://www.scribbr.com/fallacies/straw-man-fallacy/.

[4] *See, e.g.* Opp. Brf. at 7:7-10 ("simply because Kilrea performed the construction at issue pursuant to a written contract"); 7:22-27 (same; "there would never be coverage for any contractor who performed work under a contract"); 8:1-2 ("simply because a contract was utilized"); 11:13-15 ("against any contractor insured that performed work pursuant to a contract"); 13:1-2 ("denied benefits for any project for which he obtained a written contract"); and so on, to much the same effect, at e.g. 15:12-13; 16:22-24; 18:4-6 ("because of the existence of a contract"); 22:17-21; 22:26-28; 23:3-8; 23:9-11; 23:18-22; 24:9-14 ("where the liability arises out of the work performed under a contract"); 24:16-17; 24:22-23; 25:14-15 ("the existence of the contract … would, itself, serve to extinguish coverage completely"); 25:22-23; 26:6-11; 26:13-15. Repetition does not make it so. Mt. Hawley's actual arguments are set forth in its briefing, and are tethered to the actual language of the exclusion, and the facts of this claim. The exclusion does not bar coverage ***every time a contract exists*** anywhere in the fact pattern of the underlying case, nor for all injuries or damage arising out of ***work that was performed*** under a contract--the two straw-man positions Kilrea most often assails--nor is Mt. Hawley arguing it does. Nor must it be read anywhere near so broadly, in order to exclude coverage for this lawsuit.

*Truck Ins. Exch.*, 11 Cal.4th 1, 18 (1995). "If the policy language is clear and explicit, it governs." *Rosen*, 30 Cal.4th at 1074. The court's role is "simply to ascertain and declare what is in the terms or substance contained therein, not to insert what has been omitted, or to omit what has been inserted." Code Civ. Proc. § 1858. Applying those standards, "Contractual terms of insurance are honored whenever possible." *Olympic Ins. Co. v. Employers Surplus Lines Ins. Co.*, 126 Cal. App. 3d 593, 599 (1981).

B. A Clear Exclusion Is Enforceable, Even if it is Broad

The rules of contract interpretation are not suspended when a Court is called upon to interpret an exclusion. An insurer has "the right to limit the coverage of a policy issued by it and when it has done so, the plain language of the limitation must be respected." *Continental Cas. Co. v. Phoenix Constr. Co.*, 46 Cal.2d 423, 432 (1956); *Regional Steel Corp. v. Liberty Surplus Ins. Co.*, 226 Cal.App.4th 1377, 1394 (2014). Insurers "often limit coverage in exclusions despite broad general coverage provisions…. Where an exclusion is clear and unambiguous, it is given its literal effect." *Id.*, *quoting Westoil Terminals Co., Inc. v. Industrial Indem. Co.*, 100 Cal.App.4th 139, 146, 149 (2003).) Thus, broad language may properly be utilized in order to have a broad effect, even within exclusionary clauses. *Bay Cities Paving,* 5 Cal.4th at 868 (construing "related" broadly in related claims clause that limited coverage); *Travelers*, 16 Cal.App.5th at 1045 (giving broad effect to "arising out of" language in products exclusion to bar coverage for wide-ranging class actions against Opioid makers); *Los Angeles Lakers, Inc. v. Federal Ins. Co.*, 869 F.3d 795, 801 (9th Cir. 2017) (broadly enforcing exclusion for claims "arising from or in consequence of … invasion of privacy"; "first, we must acknowledge how broad this exclusionary clause is.")[5]

[5] Kilrea argues that "direct authority" dictates that "the phrase 'arising out of' must be read narrowly in the context of an exclusion" (Opp. at 17:1-3), relying on a 2004 district court decision. *Church Mutual Ins. Co. v. U.S. Liability Ins. Co.*, 347 F.Supp.2d 880, 884 (S.D. Cal. 2004). That is simply wrong. The 2017 decisions of the California Court of Appeal (*Travelers*) and the Ninth Circuit (*Los Angeles Lakers*), cited above, are "direct authority" and hold that "arising out of" must be given broad effect even in an exclusion. Moreover, both cases cite a string of other case to that effect. Much of this authority post-dates *Church Mutual*, but that decision was wrong even back in 2004. *Continental Cas. Co. v. City of Richmond*, 763 F.2d 1076, 1080 (9th Cir. 1985) ("arising out of" given broad effect in exclusionary clause).

California law recognizes a robust public policy of freedom of contract,[6] and its courts have cautioned that only rare and extreme circumstances may support invoking "public policy" to nullify the plain terms of a contract between private parties. Contract law and commercial relations depend upon predictability in the enforcement of plain contract language. *Rosen*, 30 Cal.4th at 1077-80; (refusing to extend coverage for building collapse to also cover imminent collapse); *Baldwin*, 1 Cal.App.5th at 555 (noting the "strong public policy in favor of allowing insurers to enforce" policy); *Forecast Homes, Inc. v. Steadfast Ins. Co.*, 181 Cal.App.4th 1466, 1481-83 (2010) ("our Supreme Court consistently admonishes against rewriting insurance policy language to deny parties their general freedom to contract. Where policy provisions are unambiguous, and not contrary to any statute, they generally will not be deemed unenforceable as contrary to public policy.")

C. There is No "Ambiguity in the Abstract" or "Ambiguity Per Se"

The rules applicable to determining and resolving an alleged issue of ambiguity are likewise well settled. An "insurance policy provision is only ambiguous … 'when it is capable of two or more constructions both of which are reasonable.'" *Baldwin*, 1 Cal.App.5th at 439. Courts "will not adopt a strained or absurd interpretation in order to create an ambiguity where none exists, … and they must give effect to every part of the policy. [] This includes giving effect to exclusions." *Id.* at 440 (internal citations omitted).

Contract language "must be construed in the context of that instrument as a whole, and in the circumstances of that case, ***and cannot be found to be ambiguous in the abstract***." *Bay Cities Paving*, 5 Cal.4th at 867, *quoting Bank of the West v. Superior Court*, 2 Cal.4th 1254, 1265 (1992) (emphasis added). Thus, it is well settled that "***There cannot be an ambiguity per se, i.e., an ambiguity unrelated to an application***." *Bay Cities Paving*, 5 Cal.4th at 867, *quoting CSAA v.*

---

[6] Courts may not "add to, take away from, or otherwise modify a contract for 'public policy considerations.'" *Aerojet-General Corp. v. Transport Indemnity Co.*, 17 Cal. 4th 38, 75 (1997); *see also Certain Underwriters at Lloyd's of London v. Superior Court*, 24 Cal.4th 945, 967-68 (2001) ("we do not rewrite any provision of any contract … for any purpose"; else "a court might compel insurers to give more than they promised and might allow insureds to get more than they paid for, thereby denying their 'general freedom to contract as they please').

*Superior Court*, 177 Cal.App.3d 855, 859 fn. 1. (1986) (emphasis added).[7]

In *Bay Cities Paving*, the insured argued "related" was ambiguous because it could encompass a variety of relationships. The Supreme Court disagreed, holding that a word with a broad meaning "may be used for that very reason—its breadth—to achieve a broad purpose." However, "We need not belabor the question of whether 'related is ambiguous in the abstract or in some hypothetical circumstance. That is not the question. [¶] The proper question is whether the word is ambiguous in the context of *this* policy and the circumstances of *this* case. [] 'The provision will shift between clarity and ambiguity with changes in the event at hand.'" *Bay Cities Paving*, 5 Cal.4th at 868. (Citations omitted) (emphasis in original).

Kilrea's argument is one for ambiguity in the abstract. First, Kilrea does not even bother to discuss the language of this Policy or the circumstances of this case. Second, Kilrea offers no second, alternative interpretation of the "Breach of Contract Exclusion," much less a reasonable one, instead just railing against the imaginary, overbroad, straw-man interpretations it has ascribed to Mt. Hawley. Third, Kilrea fails to show how adopting a narrower (but still textually permissible) interpretation of the exclusion could possibly make any difference for ***this claim***.

Kilrea's "parade of horribles," imagining all the hypothetical claims that might be excluded under its own, overly-broad mis-characterizations or imaginary applications of the exclusion (*e.g.*, that there might be no "additional insured" coverage; no "bodily injury" coverage; no "insured contract" coverage), are all irrelevant—even if Kilrea's premise were correct (it is not)[8]. For none of those scenarios has anything to do with "the circumstances of this case," with "the event at hand." *Id.*; *Blasiar*, 76 Cal.App.4th at 755 (rejecting relevance of "a

---

[7] *See also Wallman v. Suddock*, 200 Cal.App.4th 1288, 1307 (2011) ("the proper question is not whether 'TBD' is ambiguous in the abstract, but rather whether it is ambiguous in the context of this policy and this case"); *Blasiar, Inc. v. Fireman's Fund Ins. Co.*, 76 Cal.App.4th 748, 755 (1999) ("hypothetical ambiguity unrelated to the facts of this case … cannot affect interpretation of the Policy on the facts presented here").

[8] The premise of each of those doomsday arguments was a straw-man argument, that the exclusion would bar coverage any time there existed a contract anywhere in the fact pattern, or any time the insured performed work on a job under a contract. (*See* fns. 1, 4)). The exclusion as worded says no such thing; nor has Mt. Hawley argued either of those interpretations.

hypothetical ambiguity unrelated to the facts of this case").

The "circumstances of this case," the "event at hand," *Bay Cities Paving*, 5 Cal.4th at 868, involved Horowitz suing Kilrea (the Named Insured) for breaching a written contract between Horowitz and Kilrea, and for certain property damage arising from that breach. Mt. Hawley's opening brief worked through the Horowitz complaint, in considerable detail, to show that both the overall "suit" and each cause of action within the suit arose from the alleged breaches of contract and warranties. (Dkt. #27 at 6-10, 13-16.) Kilrea offers no response. Kilrea does not even discuss the Horowitz Complaint, at all, essentially conceding the argument.

There is nothing "ambiguous" in applying the language of ***this exclusion*** to the facts of ***this case***. It is facially applicable. The plain wording of the exclusion squarely fits this claim, to a tee. It reads: "This insurance does not apply, nor do we have a duty to defend any claim or 'suit' for … 'property damage' … arising directly or indirectly out of the following: a. Breach of express or implied contract; b. Breach of express or implied warranty…." (Dkt. #27 at 33.) Horowitz's suit against Kilrea is exactly that -- a suit for property damage arising out of the breach of an express contract and implied warranties.

Kilrea has identified no ambiguity, and its argument for ambiguity in the abstract is impermissible and meritless. The exclusion plainly applies to this suit.

D. <u>The Policies' Coverage Was Not Illusory</u>

Kilrea's illusory coverage argument (Opp. at 18-25) is ultimately set up as a response to the same "straw-man" arguments that served as the foils for its ambiguity arguments: that the exclusion somehow applies whenever a contract exists, and that the exclusion bars coverage for any injury or damage suffered by anyone that happens to arise out of work that was performed under a contract. (*Id.* at 18:13-15; 22:18-21; 22:26-28; 23:3-11; 23:18-20; 24:9-14; 24:22-23; 25:3-6; 25:14-15; 25:22-23; 26:6-16.) Neither reflects what the Breach of Contract Exclusion says, or what Mt. Hawley has actually argued.

Mt. Hawley cited half a dozen cases in its opening brief, explaining general principles of illusory contracts, and how those principles have been extended to the insurance context to arguments over illusory coverage. (Dkt. #27 at 20-21.) Just as with general contract law, a

"contract is illusory where one party provides no legal consideration," *Harris v. TAP Worldwide, LLC*, 248 Cal.App.4th 373, 385 (2016), so too with insurance contract law, where a policy's coverage is illusory only where the policy provides no coverage whatsoever. (Dkt. #27 at 21:6-14). Those standards comport with basic legal principals of contract law learned in the first year of law school. *See McLellan v. Fitbit, Inc.*, 2018 WL 1913832, *3 (N.D. Cal. 2018) (collecting authority for rule that courts generally "do not inquire into the adequacy of consideration.") California's Civil Code specifies that "any benefit conferred, or agreed to be conferred … is a good consideration for a promise" (Civ. Code § 1605); and that a "written instrument is presumptive evidence of a consideration." (Civ. Code § 1614.)

Kilrea disregards both the general contract law principles and the referenced case law, without discussion, suggesting it is all obviated by the single case of *John's Grill, Inc. v. The Hartford Fin. Servs. Grp., Inc.*, 86 Cal.App.5th 1195, 1222 (2022)—for which the California Supreme Court has granted review. *See* Cal.R.Ct. 8.115(e) (grant of review means case "has no binding or precedential effect"). *John's Grill* involved a special virus coverage endorsement that Hartford (Sentinel) added to a first-party property policy, that was found to afford virtually no coverage because it apparently remained subject to the same specified causes of loss terms as the main form. 86 Cal.App.5th at 1220-21 ("none of the listed causes has anything to do with the biological processes that actually cause a virus"). It made no sense to add an endorsement that by its terms extended additional coverage, when it could not be triggered. Sentinel imagined some far-fetched scenarios where a virus could be transmitted by a covered cause of loss—which it agreed were "exceedingly rare, even freakish," (*Id.* at 1222), and the court held that did not suffice. *Id.* at 1224.

Even if *John's Grill* were precedential and reflects California law, it is readily distinguishable. First, it addressed the scope of a single endorsement affording supplemental coverage, not the entire policy. It made no sense to sell a supplemental coverage endorsement, then have it cover nothing. In this case, the question is the coverage afforded by Kilrea's entire CGL policy; to render the entire policy illusory, the Breach of Contract Exclusionary endorsement would have to eliminate all coverage. Second, the coverage afforded to Kilrea under

the Policies was substantial and real. Notwithstanding the exclusion, Kilrea continued to be covered under its CGL policy for a wide range of liabilities for bodily injury, property damage, personal and advertising injury liabilities, including (but not limited to) those described in footnote no. 1, above. Not every suit against a business, or even a builder, under a CGL policy is one for breach of contract or for damages arising out of an alleged breach of contract or warranty. Many are not. Just because some claims are excluded, that does not make a policy illusory.

Kilrea's unsupported speculations and conjecture that the exclusion would bar coverage for all bodily injury claims (Opp. at 22-23), completed operations claims (Opp. at 23-24), additional insured coverage (Opp. at 24-25), or "other coverage grants" [sic], are all premised on Kilrea's own mischaracterizations of the exclusion (the straw-man arguments from fns. 1, 2 & 4, above)—not its actual language or any arguments Mt. Hawley made in in its motion. Bodily injury claims, claims occurring after an insured has completed his work on a job, and claims against additional insureds, can be and are regularly brought by claimants who have no contractual relationship with the insured and are not suing on or under any contract.

Kilrea's illusory coverage arguments lack merit and provide no basis for the Court to rewrite the parties' contracts to delete the Breach of Contract Exclusion.

## II. CASE LAW OVERWHELMINGLY SUPPORTS ENFORCING BREACH OF CONTRACT EXCLUSIONS, LIKE MT. HAWLEY'S

### A. Mt. Hawley's Exclusion Has Been Enforced by Five Federal District Court Judges and Twice By the Fifth Circuit Court of Appeals

Kilrea discussed only *Aguilar* and to *Associated Industries*, the two California federal district court decisions. (Opp. at 11-12.) In fact, Mt. Hawley's exclusion has been enforced in several district court and appellate decisions outside California, as well, by courts applying similar rules of contract interpretation.

#### 1. *Associated Industries* is More Persuasive than *Aguilar*

*Associated Industries*, 536 F.Supp.3d 676, is essentially on point. Mt. Hawley's insured was a general contractor, being sued by the owner (who he was in contract with). This was a recent, published decision, granting summary judgment for Mt. Hawley. In a lengthy, detailed ruling, the court carefully worked through the facts, policy language and governing standards, *id.*

at 679-84, before turning to the Breach of Contract Exclusion. The court cited and discussed the California case law concerning breach of contract exclusions (*Southgate*, *Medill*) and the breadth of the phrase "arising out of" when used in an exclusion. (*Travelers*, *Crown Capital*). *Id.* at 684-85. The court discussed Ninth Circuit decisions enforcing similar exclusions (*Trenches*, *Nestle*), as well as two California district court decisions (*James River*, *Penn-Star*), and two of the Texas decisions enforcing Mt. Hawley's exclusion. *Id.* at 685-86. Then, in a detailed discussion supported by evidence and case law authority, the court applied those legal standards in holding the exclusion barred coverage. *Id.* at 686-88.

*Aguilar,* 2008 WL 11342656, is an unpublished minute order denying a motion for summary judgment. The Breach of Contract Exclusion was the third and final issue addressed, and the discussion was two paragraphs. *Id.*, *3. No case law was cited or discussed, including *Medill* or *Southgate*, nor were the contract interpretation or illusory coverage standards discussed. *Id*. Regardless, substantial case law has developed since 2008 regarding each of those questions. Finally, *Aguilar* appears to be distinguishable factually. Mt. Hawley's insured was the subcontractor (a framer), not the general contractor, being sued by the hotel owner. The nature of all of the hotel owner's claims against the framing subcontractor were not detailed, but there were references to a fire, water intrusion and mold damage. How those damages related to the subcontractor's contractual duties to the hotel owner, if any, or to the framing scope of work, was also unstated. In sum, the facts of the present case more closely track *Associated Industries*.

As between the two California district court rulings, Mt. Hawley submits that *Associated Industries* is more recent, better reasoned and factually more similar. It is also consistent with the substantial body of case authority that has developed since 2008, enforcing these exclusions.

2. Other Federal District Court and Fifth Circuit Decisions <u>Have Given Effect to Mt. Hawley's Exclusion</u>

In *HC Waterford Properties, LLC v. Mt. Hawley Ins. Co.*, 2009 WL 2600431 (S.D. Fla. 2009), the court held the exclusion barred coverage for a unit owner's claim against a condominium developer under the sales contract, as well as certain misrepresentations, leaks and water damage. *Id.* at *3. Because "Waterford's duty of care stemmed from the fact that it was the

developer of the condominium and because it sold the unit to Cox," the exclusion applied. *Id.* at *6-7. Applying interpretive law like California's, including that "arises out of" "should be interpreted broadly," the court held that the Breach of Contract Exclusion barred coverage for the alleged negligence claim, as well.

*In Scottsdale Ins. Co. v. Mt. Hawley Ins. Co.*, 2011 WL 9169946 (S.D. Tex. 2011), the court applied the exclusion in a contribution action relating to the construction of a school. Mt. Hawley's insured had been sued both for breach of contract and for negligence claims relating to construction defects and damage to the school. *Id.*, *5. Applying contract law like California's concerning the breadth of "arising out of," *5, and the effect of policy endorsements, *9, the court held that the exclusion barred coverage for all the claims. The United States Court of Appeals for the Fifth Circuit affirmed, adopting the district court's reasoning. *Scottsdale Ins. Co. v. Mt. Hawley Ins. Co.*, 488 Fed.Appx. 859 (5th Cir. 2012).

In *Mt. Hawley Ins. Co. v. Slay Engineering*, 390 F.Supp.3d 794 (W.D. Tex. 2019), the court applied the exclusion to bar coverage for the general contractor insured for an underlying lawsuit over a municipal construction project. "Mt. Hawley's policies excluded coverage of claims asserted under a theory of negligence if the 'negligence' bears an 'incidental relationship' to the alleged breach of contract and/or warranty by the insured." *Id.* at 802.

In *Mt. Hawley Ins. Co. v. Huser Construction Co.*, 2019 WL 1255756 (S.D. Tex. 2019), the court applied the exclusion to bar coverage for claims brought by the developer against the insured general contractor. The court applied rules of contract interpretation very similar to California's, *id.* *5, and even rejected a "straw man" argument for illusory coverage that was similar to one of Kilrea's: "The Breach of Contract Exclusion does not reach every claim against an insured whose work is contractual in nature – the exclusion requires a <u>breach</u> of contract, not merely the <u>existence</u> of a contract." *Id.* * 7. The Fifth Circuit affirmed. *Mt. Hawley Ins. Co. v. Huser Constr. Co.*, 797 Fed.Appx. 183, 184 (5th Cir. 2020) ("Like the district court before us, we are convinced that Mt. Hawley does not owe Huber defense or indemnity with respect to the underlying action.")

B. Similarly Worded Exclusions Have Been Enforced By California State Courts, The Ninth Circuit, and California Federal District Court Judges

Mt. Hawley cited and discussed a number of cases in its opening brief, spanning the past two decades, where courts applying California law have given broad effect to breach of contract exclusions. (Dkt. #27 at 1-3 & fns. 1, 2; 14-20 & fn. 7). The two California Court of Appeal cases plainly support the broad application of such exclusions. *Southgate Recreation & Park Dist. v. California Assn. for Park & Rec. Ins.*, 106 Cal.App.4th 293, 302 (2003); *Medill v. Westport Ins. Corp.*, 143 Cal.App.4th 819, 830 (2006). Those decisions are good law and there is no contrary California authority. The Ninth Circuit has likewise enforced similar exclusions broadly, on at least four occasions. *Office Depot, Inc. v. AIG Specialty Ins. Co.*, 829 Fed.Appx. 263, 263-64 (9th Cir. 2020); *Trenches, Inc. v. Hanover Ins. Co.*, 575 Fed.Appx. 741, 742 (9th Cir. 2014); *G.K Skaggs Inc. v. Hartford Cas. Ins. Co.*, 579 Fed.Appx. 542, 544 (9th Cir. 2014); *Nestle, USA, Inc. v. Travelers Casualty & Surety Co.*, 10 Fed.Appx. 438, 440 (9th Cir. 2001). As have a large number of different district court judges, applying California law. (*See* cases cited at Dkt. #27 at 2 & fn. 3; 17-20.)[9] The contractual interpretation and reasoned analysis undertaken by those courts support Mt. Hawley's position in this case.

Kilrea attempts to distinguish all these cases on the bases that they addressed CGL "Coverage B" claims, or non-CGL policies—not "property damage" claims.[10] (Opp. at 12-16.)

---

[9] Kilrea cites to one outlier, the 2004 decision in *Church Mutual*, 347 F.Supp.2d 880 (Opp. at 17.) That decision (1) erred in finding that it must give a narrow meaning to "arising out of" (see fn. 5 above); (2) pre-dated *Megill* and did not cite *Southgate*; and (3) found that a fraud claim in the case before it was independent of the contract claims. *Id.* at 889. More recent decisions have noted these distinctions. *See AKN Holdings, LLC v. Great Am. E&S Ins. Co.*, 2021 WL 2325647, *4 (C.D. Cal. 2021) (*Church Mutual* was "decided without the benefit of *Medill*"); *Spa de Soleil, Inc. v. General Star Indem. Co.*, 787 F.Supp.2d 1091, 1098 (C.D. Cal. 2011) (following *Medill* and *Southgate*; referring to *Church Mutual* via "cf" citation).

[10] Kilrea argues, without any evidence or authority, that CGL Coverage B and D&O coverage address a higher proportion of claims that are not predicated on contracts, unlike CGL Coverage A. (Opp. at 13, 15.) That contention is pulled out of thin air, statistically dubious, and far from apparent. CGL Coverage A (bodily injury and property damage liability) also involves many types of common claims that are not predicated on breach of contract claims, as noted above (*see* fn. 1; *e.g.* premises liability, accidents, toxic torts). Coverage B has some offenses that may overlap into contractual disputes at times (real property offenses, intellectual property

But that is a distinction without a difference; nothing in the analysis of any of those courts would suggest it matters. Each court applied the contract language before it, broadly, to the facts of the claim presented. Indeed, the five district court cases (two affirmed by the Fifth Circuit), discussed above, enforcing Mt. Hawley's exact exclusion did so in the context of "property damage" claims arising from breach of contract or warranty claims.

## III. KILREA'S OPPOSITION EVIDENCE RAISES NO ISSUE OF FACT

Kilrea offers two declarations: one to the effect that its premium was calculated by reference to its gross receipts (Dkt. #31-3 at 2-3); and a second, that the Policy has several provisions that contemplate that the insured will have certain contracts in force (for example—requiring subcontractors to indemnify the insured). (Dkt. # 31-1 at 2-3.) Generally, the facts presented are irrelevant or even serve to confirm that Kilrea's own proffered overbroad, straw-man depictions of the Breach of Contract exclusion are unwarranted.

Gross receipts may well bear upon the size of an insured's operations and thus the amount of its risk (for rating purposes). That does not mean the Policy issued is going to cover the insured for breaching its contracts. Quite the opposite, Mt. Hawley's Quote, accepted by Kilrea, contained the Breach of Contract Exclusion, and the Exclusion was incorporated in the Binder and included in the Policy--six years in a row. The plain language of the Policy is what defines the coverage extended. *Travelers Cas. & Sur. Co. v. Emps. Ins. of Wausau*, 130 Cal. App. 4th 99, 115-16 (2005) ("the method of calculating the premium cannot change the plain meaning of the policy language"). As for Kilrea's argument that other provisions of the Policy contemplate that the insured will enter into and maintain certain contracts, that supports Mt. Hawley's position, not Kilrea's. Mt. Hawley has never argued the exclusion applies any time there is a contract in

---

claims, disparagement), and others that would not. D&O claims are very often predicated upon contractual obligations of directors and officers, yet the courts have applied the breach of contract exclusions broadly, as written. Regardless, even if Kilrea's speculation were correct and the Breach of Contract exclusion applied to a larger percentage of otherwise-covered claims under Coverage A than under Coverage B or D&O coverage, that would not matter. There is nothing unusual or improper about an exclusion that "excludes coverage for particular injuries or damages in certain specified circumstances while providing coverage in other circumstances." *Baldwin*, 1 Cal.App.5th at 545. An insurance company "can choose which risks it will insure and which it will not." *Fidelity & Dep. Co. v. Charter Oak Fire Ins. Co.*, 66 Cal.App.4th 1080, 1086 (1988).

existence, or to any and all claims that may ever arise from work performed under a contract. Those are merely Kilrea's straw-man arguments. The exclusion applies, by its terms to "any claim or 'suit' for … 'property damage' arising directly or indirectly out of" a "breach of express or implied contract" or a "breach of express or implied warranty." Claims against Kilrea (or any other insured) that are not premised on those excluded risks are not thereby excluded.

The present claim, however, is squarely excluded. Mr. Horowitz's lawsuit against Kilrea was for property damage arising out of breaches of contract and warranty. The allegations of the Horowitz Second Amended Complaint and the plain language of the Breach of Contract Exclusion support this conclusion.

## CONCLUSION

For each of the foregoing reasons, Mt. Hawley requests an order granting its motion for partial summary judgment.

Dated: September 22, 2023

PROUGH LAW, APC

By: */s/ Michael D. Prough*
Michael D. Prough

Attorneys for Plaintiff
Mt. Hawley Insurance Company