UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MT. HAWLEY INSURANCE COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>JOHN MCATAMNEY, et al.,<br><br>Defendants. | Case No. 23-cv-01335-JST<br><br>**ORDER GRANTING MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Re: ECF No. 27 |

Before the Court is Plaintiff Mt. Hawley Insurance Company's ("Mt. Hawley") motion for partial summary judgment. ECF No. 27. The Court will grant the motion.

**I.  BACKGROUND[1]**

This case concerns a coverage dispute between Defendants John McAtamney and Kilrea Construction, Inc. (collectively "Kilrea") and Kilrea's insurer, Mt. Hawley.

McAtamney, a general contractor doing business as Kilrea Construction, was hired by Jeffrey Horowitz to perform a home-renovation project on Horowitz's residence in 2016. ECF Nos. 15 ¶ 6; 15-8 ¶¶ 24–26. Pursuant to the contract between Kilrea and Horowitz, Kilrea was to provide Horowitz "with two (2) bids for all items of work to be performed by subcontractors in each trade," and Horowitz would then enter a direct contract with each individual subcontractor. ECF No. 15-8 ¶ 29.

In connection with this project, Kilrea obtained commercial general liability ("CGL") coverage from Mt. Hawley to protect itself from liability for bodily injury or property damage arising from its contractor operations. ECF No. 15 ¶¶ 8–19. In total, Mt. Hawley issued six

---

[1] The following facts are either undisputed or have been judicially noticed by the Court. *See infra* Section IV-A.

consecutive CGL policies to Kilrea between 2016 and 2021. *Id.* The policies generally included coverage for "sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' . . . ." *Id.* ¶ 20.

The policies also contain a breach of contract exclusion that is relevant to this lawsuit. This provision states that Mt. Hawley does not have "a duty to defend any claim or 'suit' for 'bodily injury,' 'property damage,' or 'personal and advertising injury' arising directly or indirectly out of" a "[b]reach of express or implied contract[,]" or a "[b]reach of express or implied warranty[.]" *Id.* ¶ 21.

Sometime after May 2017, Horowitz discovered defects in the work conducted on his home. ECF No. 15-8 ¶ 39. Horowitz filed a complaint in San Francisco Superior Court on June 9, 2020, alleging that Kilrea breached obligations to construct and complete the "work required under the Contract in an expeditious and workmanlike manner, free from any faults and defects[.]" ECF No. 29-7 at 14. He brought claims for breach of contract, breach of implied warranty, negligence, negligent supervision, and declaratory relief. On June 24, 2022, Horowitz filed his second amended complaint. ECF No. 15-8. Like its predecessor, the second amended complaint asserts claims for breach of contract, breach of implied warranty, negligence, negligent supervision, and declaratory relief. *Id.* It again alleges that Kilrea breached obligations to construct and complete the "work required under the Contract in an expeditious and workmanlike manner, free from any faults and defects[.]" *Id.* ¶ 52. It includes a long list of "deficiencies and damages," including overbilling for defective work, defective construction at various locations on the property, improper painting, defective installation of certain improvements, and other damages. *E.g.*, *id.* ¶ 48.

On July 30, 2021, Mt. Hawley agreed to defend Kilrea against Horowitz's claims, but it explicitly reserved "the right to later deny coverage for any uncovered claims, [including] the right to deny indemnity [and] withdraw from the defense of the action . . . if at any time it becomes apparent that none of the claims are covered by the policies." ECF No. 15-10 at 20. On March 10, 2023, Mt. Hawley informed Kilrea that "it has no contractual duty to defend or indemnify the [i]nsureds in the *Horowitz* action" in light of the breach of contract exclusion in the policies. ECF

2

1  No. 15-12 at 4.

2      Mt. Hawley now brings this motion for partial summary judgment, arguing that it has no
3  duty to defend or indemnify Kilrea.  ECF No. 27.

4  **II.    JURISDICTION**

5      The Court has jurisdiction pursuant to 28 U.S.C. § 1332(a).

6  **III.    LEGAL STANDARD**

7      **A.    Federal Rule of Civil Procedure 56(a)**

8      Granting summary judgment is proper when a "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "A fact is 'material' only if it might affect the outcome of the case, and a dispute is 'genuine' only if a reasonable trier of fact could resolve the issue in the non-movant's favor." *Fresno Motors, LLC v. Mercedes Benz USA, LLC*, 771 F.3d 1119, 1125 (9th Cir. 2014) (citing *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986)).  The court must consider all evidence in the light most favorable to the non-moving party.  *Isbell v. City of San Diego*, 258 F.3d 1108, 1112 (9th Cir. 2001).

    Where the party moving for summary judgment would bear the burden of proof at trial, that party "has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case."  *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc*., 213 F.3d 474, 480 (9th Cir. 2000).  Where the party moving for summary judgment would not bear the burden of proof at trial, that party "must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Cos*., 210 F.3d 1099, 1102 (9th Cir. 2000).  If the moving party satisfies its initial burden of production, the nonmoving party must produce admissible evidence to show that a genuine issue of material fact exists.  *Id*. at 1102–03.  If the nonmoving party fails to make this showing, the moving party is entitled to summary judgment.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).  "Reasonable doubts as to the existence of material factual issue[s] are resolved against the moving party and inferences are drawn in the light most favorable to the non-

3

moving party." *Barnes v. Sea Hawaii Rafting, LLC*, 889 F.3d 517, 538 (9th Cir. 2018) (quoting *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000)).

### B. California Insurance Law

"In California, the interpretation of an insurance policy is a question of law for the court." *Associated Indus. Ins. Co. v. Mt. Hawley Ins. Co.*, 536 F. Supp. 3d 676, 682 (S.D. Cal. 2021) (citing *Powerine Oil Co., Inc. v. Superior Court*, 37 Cal. 4th 377, 390 (2005)). "Under statutory rules of contract interpretation, the mutual intention of the parties at the time the contract is formed governs interpretation. Such intent is to be inferred, if possible, solely from the written provisions of the contract." *AIU Ins. Co. v. Superior Ct.*, 51 Cal. 3d 807, 821–22 (1990) (internal citations omitted). "To determine the intent of the parties behind an insurance contract, the Court looks first to the language of the contract in order to ascertain its plain meaning, reading the language in its ordinary and popular sense, unless used by the parties in a technical sense or a special meaning is given to them by usage." *Associated Indus.*, 536 F. Supp. 3d at 682 (internal quotations omitted).

Insurance companies may choose which risks to insure "and coverage limitations set forth in a policy will be respected." *Fid. & Deposit Co. v. Charter Oak Fire Ins. Co.*, 66 Cal. App. 4th 1080, 1086 (1998). An "insurer owes a broad duty to defend its insured against claims that create a potential for indemnity." *Horace Mann Ins. Co. v. Barbara B.*, 4 Cal. 4th 1076, 1081 (1993), *as modified on denial of reh'g* (May 13, 1993). And if one claim made against the insurer is potentially covered, the insurer generally owes a duty to defend against the entire action. *Id.*

Although the duty to defend is broad, it is not without limits, and California courts have cautioned against "misconstru[ing] the principle of 'potential liability' under an insurance policy." *Gunderson v. Fire Ins. Exch.*, 37 Cal. App. 4th 1106, 1114 (1995). "[W]here there is no potential for recovery on a covered claim, there is no duty to defend." *Tana v. Professionals Prototype I Ins. Co.*, 47 Cal. App. 4th 1612, 1616 (1996). "[T]he determination whether the insurer owes a duty to defend usually is made in the first instance by comparing the allegations of the complaint with the terms of the policy. Facts extrinsic to the complaint give rise to a duty to defend when they reveal a possibility that the claim may be covered by the policy." *Waller v. Truck Ins.*

4

1  *Exchange, Inc.*, 11 Cal. 4th 1, 19 (1995), *as modified on denial of reh'g* (Oct. 26, 1995); *see also*
2  *S.B.C.C., Inc. v. St. Paul Fire & Marine Ins. Co.*, 186 Cal. App. 4th 383, 388 (2010) ("[I]f, as a
3  matter of law, neither the complaint nor the known extrinsic facts indicate any basis for potential
4  coverage, the duty to defend does not arise in the first instance.").

## IV.  DISCUSSION

### A.  Request for Judicial Notice

Mt. Hawley requests judicial notice of three documents: Horowitz's complaint filed in San Francisco Superior Court on June 9, 2020, *Jeffrey Horowitz etc. v. John Paul McAtamney, etc., et. al*, Case No. CGC-20-584666, ECF No. 29-7; the first amended complaint in this same action filed on May 6, 2022, ECF No. 29-8; and the second amended complaint subsequently filed on June 24, 2022.  ECF No. 29-9.  Pursuant to Federal Rule of Evidence 201(b), courts may judicially notice facts that are "not subject to reasonable dispute," including documents filed in federal or state courts.  *See Harris v. County of Orange*, 682 F.3d 1126, 1132 (9th Cir. 2012).  Because the aforementioned documents are undisputed matters filed in state court, the Court will take judicial notice of them.  *See Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001).

### B.  Breach of Contract Exclusion

At bottom, this dispute concerns the scope of the breach of contract exclusion.  The exclusion is as follows:

> This insurance does not apply, nor do we have a duty to defend any claim or "suit" for "bodily injury," "property damage," or "personal and advertising injury" arising directly or indirectly out of the following:
>
> a. Breach of express or implied contract;
>
> b. Breach of express or implied warranty;
>
> c. Fraud or misrepresentation regarding the formation, terms or performance of a contract; or
>
> d. Libel, slander or defamation arising out of or within the contractual relationship.

ECF No. 15 ¶ 21.  Mt. Hawley argues that it has no duty to defend Kilrea in the *Horowitz* action because its policies do not apply to any suit for property damage "arising directly or indirectly out

of" a breach of contract or warranty. ECF No. 27 at 19–20. Kilrea responds that Mt. Hawley's interpretation of the breach of contract clause is too broad; that interpretation would render the insurance policy illusory; and that Mt. Hawley's motion fails to address relevant authority. *See generally* ECF No. 31.

Although Kilrea never offers a coherent interpretation of the insurance policy at issue, it appears not to dispute that the breach of contract exclusion applies to Horowitz's breach of contract claim. The dispute thus centers on the remaining claims, which in turn requires the Court to construe the term "arising directly or indirectly out of." ECF No. 15 ¶ 21.

California courts have interpreted the term "arising out of" as "requiring only a 'slight connection' or an 'incidental relationship' between the injury and the excluded risk." *Century Transit Sys., Inc. v. Am. Empire Surplus Lines Ins. Co.*, 42 Cal. App. 4th 121, 127 n.4 (1996) (quoting *Continental Cas. Co. v. City of Richmond*, 763 F.2d 1076, 1081 (9th Cir. 1985)). "It is settled that this language does not import any particular standard of causation or theory of liability into an insurance policy. Rather, it broadly links a factual situation with the event creating liability, and connotes only a minimal causal connection or incidental relationship." *Acceptance Ins. Co. v. Syufy Enterprises*, 69 Cal. App. 4th 321, 328 (1999).

*Southgate Rec. & Park Dist. v. California Assoc. for Park and Rec. Ins.*, 106 Cal. App. 4th 293 (2003) ("*Southgate*") is illustrative of this principle. In that case, Southgate contracted with a general contractor to build a golf course; however, the contractor went bankrupt prior to its completion. *Id*. at 297. Various subcontractors sued Southgate for conversion, breach of trust, and violation of stop notice.[2] Southgate's insurer claimed it had no duty to indemnify Southgate for the subcontractors' claims because the insurance contract excluded liability "[a]rising out of or related to construction . . . contracts." *Id.* at 301. In turn, Southgate sued the insurer, arguing that the subcontractors' claims were not based on the construction contract, but rather were based on Southgate's alleged negligence and violation of a duty to verify surety bonds. *Id.* At issue before

---

[2] "The stop notice law for public works . . . provides an alternative to a mechanic's lien and allows a subcontractor or supplier to make a claim against the public entity project owner for a portion of the undisbursed construction proceeds." *Southgate*, 106 Cal. App. 4th at 299.

6

1    the court was whether the insurance policy's exclusion for liability "arising out of" construction

2    contracts applied to the subcontracts' tort claims. *Id*. In holding that the subcontractors claims

3    "fit comfortably within the construction contract exclusion," the court noted that "[t]he fact the

4    subcontractors have alleged noncontractual theories that Southgate acted negligently with respect

5    to the construction funds or breached statutory duties regarding the adequacy of the surety bonds

6    changes nothing. It is not the underlying claims' legal theories that control coverage and

7    exclusions—it is their facts." *Id.* at 302.

8        Several federal courts applying California law have interpreted breach of contract

9    exclusions similarly. In *Associated Industries*, 536 F. Supp. 3d at 682, a dispute arose when an

10   insurer declined to defend a construction company in litigation over a construction defect.

11   According to the insurer, because the policies included a "Breach of Contract Exclusion" for all

12   claims for bodily injury, property damage, or advertising injury "arising directly or indirectly out

13   of" a breach of express or implied contract, it had no duty to defend the company in the underlying

14   action. *Id.* at 683–84. The *Associated Industries* court agreed, holding that "each claim was, at a

15   minimum, incident to or connected with" the allegations that the company "breached various

16   contracts . . . by constructing the building in a defective manner," and thus the underlying

17   litigation was not covered by the policies. *Id.* at 686.

18       The court in *James River Insurance Co. v. Medolac Laboratories*, 290 F. Supp. 3d 956

19   (C.D. Cal. 2018), interpreted a breach of contract exclusion in the same manner. There, a

20   disagreement arose between a business, Prolacta Bioscience, and its former employee, who had

21   started a competing business called Medolac. *Id.* at 960. Prolacta brought claims against the

22   former employee for breach of contract, conversion, unfair competition, and intentional

23   interference with prospective economic advantage. *Id.* When the former employee tendered the

24   claims to her new employer's insurance carrier, the insurer argued that it owed no duty to defend

25   the claims because the policy contained a breach of contract exclusion for "personal and

26   advertising injur[ies] arising out of a breach of contract." *Id.* at 961. The *James River* court sided

27   with the insurer, holding that the insurer had no duty to defend the former employee against any of

28   the claims as they "all ar[ose] out of the same conduct alleged to constitute a breach of contract."

*Id.* at 959.

Like the foregoing courts, this Court finds that the exclusion bars potential for coverage with respect to the entire underlying action. As discussed above, Horowitz alleges claims for breach of contract, breach of implied warranty, negligence, negligent supervision, and declaratory relief. ECF No. 15 ¶ 31. Each of these claims share the same operative facts—namely, that Kilrea breached a contract with Horowitz to properly construct his home. To paraphrase the *Associated Industries* court, all five of these claims are "at a minimum, incident to or connected with [Horowitz's] allegations that [Kilrea] breached various contracts or warranties by constructing the [residence] in a defective manner." *Associated Indus.*, 536 F. Supp. 3d at 686. As a threshold matter, Horowitz's breach of contract and implied warranty claims "facially assert contract or warranty rights[.]" *Id*. And Horowitz's claims for negligence and negligence supervision likewise are "incident to or connected with" the breach of contract allegations. *Id*. For example, Horowitz's negligence claim states that Kilrea breached his duty of care by failing to "construct and provide labor or materials for the work at the Property with due care, . . . or in accordance with the plans, specifications, and other contract documents[.]" ECF No. 15-8 ¶ 82. Moreover, Horowitz's negligent supervision claim asserts that "[u]nder the Contract, [Kilrea] undertook the responsibility to oversee the work of [its] own employees as well as the subcontractors hired to perform the work at the Property," and that Kilrea "engaged individuals and/or entities who were unfit and/or incompetent to perform the work[.]" *Id*. ¶¶ 86, 87. All of Horowitz's claims arose out of, or at the very least, bear some connection to the same conduct alleged to constitute a breach of contract. This precludes coverage.

Kilrea raises three counterarguments in opposition: he contends that Mt. Hawley's interpretation of the phrase "breach of contract" is too broad; that the interpretation would render coverage under the policy illusory, and that Mt. Hawley's motion fails to cite relevant authority. *See* ECF No. 31. These arguments are not persuasive.

Beginning with the first argument, Kilrea avers that Mt. Hawley's interpretation of the phrase "breach of contract" is too broad. ECF No. 31 at 11, 16. In support of this position, he cites to *Mt. Hawley Ins. Co. v. Aguilar*, No. SACV0700969CJCMLGX, 2008 WL 11342656, at *3

8

1   (C.D. Cal. Feb. 29, 2008), which briefly noted that "Mt. Hawley's interpretation of the 'breach of
2   contract' exclusion is so broad that that it is unreasonable."  Although there are some factual
3   similarities between *Aguilar* and the current dispute (both concern disagreements between an
4   insurer and a contractor), the Court will not follow it.  Its discussion of the issue is cursory and
5   unsupported by the authority, and it does not discuss seminal California cases governing contract
6   interpretation, such as *Southgate* and *Medill v. Westport Ins. Corp.*, 143 Cal. App. 4th 819 (2006).
7   Moreover, the *Aguilar* decision has not been followed by other courts in the years since 2008 and
8   it now stands at odds with the substantial body of caselaw, both in California and other districts,
9   that has developed since.  *See Associated Indus.*, 536 F. Supp. 3d at 682–83; *Scottsdale Ins. Co. v.*
10  *Mt. Hawley Ins. Co.*, 2011 WL 9169946, at *5 (S.D. Tex. 2011); *Mt. Hawley Ins. Co. v. Slay*
11  *Engr.*, 390 F. Supp. 3d 794, 801 (W.D. Tex. 2019).

12          Next, Kilrea argues that Mt. Hawley's application of the breach of the contract exclusion
13  would render coverage illusory under the policy.  ECF No. 31 at 18.  The Court does not agree;
14  not every lawsuit that could be brought against Mt. Hawley would necessarily arise out of the
15  breach of contract exclusion.  As Mt. Hawley notes, "[t]he exclusion does not bar coverage every
16  time a contract exists . . . , nor [does it bar coverage for] injuries or damage arising out of work
17  that was performed under a contract."  *Id.* at 9 n.4 (emphasis omitted); *see also Scottsdale Ins. Co.*,
18  2011 WL 9169946, at *9 (holding that only if the exclusion "could reach any claim against an
19  insured whose work is contractual in nature" would it "render coverage illusory.").  Thus, the
20  Court finds that the contract exclusion is not so broad as to be illusory.

21          Finally, Kilrea contends that the cases that Mt. Hawley cites "do not involve the property
22  damage or bodily injury provisions so vital to a general contractor[.]"  ECF No. 31 at 13.  True,
23  some of Mt. Hawley's cases do not concern "general contractors being deprived of coverage for
24  contracts central to their business activities."  *Id.* at 15.  But it is the underlying legal analysis, not
25  the facts of each given case, that is dispositive.  Although cases cited by Mt. Hawley, such as
26  *Southgate*, 106 Cal. App. 4th at 301–02; *Medill*, 143 Cal. App. 4th at 829–30; and
27  *Autodistributors, Inc. v. Nationwide E&S Specialty*, No. 21-CV-06204-HSG, 2022 WL 3648554,
28  at *3 (N.D. Cal. Aug. 24, 2022) do not share common facts, each reaches its conclusion by relying

1   on the California courts' broad definition of the term "arising out of," which is central to the issue
2   presently before the Court.
3        In sum, the breach of contract exclusion applies, thereby precluding any "potential for
4   recovery" for each claim made against Kilrea in the *Horowitz* litigation. *Tana*, 47 Cal. App. 4th at
5   1616. Accordingly, Mt. Hawley does not have a duty to defend Kilrea and is entitled to partial
6   summary judgment.

## CONCLUSION

8        For the foregoing reasons, the Court grants Mt. Hawley's motion for partial summary
9   judgment.
10  **IT IS SO ORDERED.**
11  Dated: January 2, 2024



JON S. TIGAR
United States District Judge